685 A.2d 194

**Edward J. WATSON, Appellant,**

**v.**

**AMERICAN HOME ASSURANCE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 18, 1996.

Filed Nov. 20, 1996.

294

296

---

Francis X. Kelly, Philadelphia, for appellant.

William J. Barker, Jr., Philadelphia, for appellee. (Submitted)

Before DEL SOLE, BECK and POPOVICH, JJ.

POPOVICH, Judge:

Appellant Edward Watson appeals from the trial court's May 4, 1995 Order denying his request for a new trial. Herein, appellant contends that a new trial is warranted for the following reasons: (1) The trial court misinterpreted the provision of the group disability insurance policy at issue; (2) The trial court's verdict was against the weight of the evidence; (3) The trial court erred in not permitting him to testify that semilente is absorbed more slowly than regular insulin; and, (4) The trial court improperly excluded Dr. Allen Zechowy's videotaped deposition. We affirm.

The relevant facts and procedural history are as follows: In February 1980, appellant filed a complaint against American Home Assurance Company (American Home) seeking coverage under a group disability insurance policy issued to appellant's former employer, Ebasco Services, Inc. (Ebasco). The insurance policy covered accidental death, dismemberment and total disability. In his complaint, appellant claimed that on November 15, 1976, while he was working at the Ebasco office in New York City, he tripped over a wastepaper basket and hit his head. He further claimed that the injury to his head caused him serious brain damage resulting in total disability.

American Home refused to pay under appellant's policy because it believed that appellant's brain damage resulted exclusively from his extensive history of diabetes and not from an alleged fall at the Ebasco office. Specifically, American Home believed that appellant's brain damage resulted from a

pre-existing disease (diabetes) and not from an "accident" as was required by the policy. By its terms, the policy at issue provided that coverage for disability due to injury was permitted where "injury" was "caused by an accident ... resulting directly and independently of all other causes in loss covered by this policy."

Following a bench trial held on June 6, 1994, the trial court entered a verdict in favor of American Home, thereby determining that American Home's denial of appellant's claim was not a breach of the policy. The trial court specifically found that appellant's disability was due to repeated episodes of hypoglycemia (low blood sugar) associated with diabetes, and that his disability was not due to an alleged fall at the Ebasco office. Accordingly, the trial court found that appellant's disability was not due to an "accident resulting directly and independently of all other causes," as was required under the policy for appellant to recover.

Appellant filed post-trial motions on August 29, 1994, and on March 6, 1995. The trial court denied appellant's post-trial motions. This appeal followed.[1]

■ Appellant's first claim is that the trial court misinterpreted the provision of the group disability policy at issue. Specifically, he claims that the trial court erred in concluding that he had the burden of proving that his disability was caused by an accident resulting "directly and independently of all other causes." Instead, appellant claims, the trial court should have held that he only had the burden of proving that his disability was caused by an "accident," regardless of whether the accident was "the direct and independent cause" of his disability. Appellant further argues that if this Court determines that he had the burden of proving that an accident was the "direct and independent cause of his disability," we must find that the trial court misapplied the law in holding that he failed to meet this burden. We disagree.

1. We note that the rather lengthy delay between the filing of appellant's complaint and the resolution of his appeal are not attributable to this Court.

Preliminarily, "we note that federal law governs this issue, including the construction of the policy provision. Congress, in adopting the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, expected that 'a federal common law of rights and obligations under ERISA-regulated plans would develop.'" *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1451 (5th Cir.1995) (citation omitted). *See McClure v. Life Ins. Co. of N. Am.*, 84 F.3d 1129 (9th Cir.1996).[2] State law does not control the construction of ERISA accidental death, dismemberment and permanent disability policies such as the one at issue in this case. *McClure, supra.* However, in ascertaining the applicable federal common law, courts may draw guidance from analogous state law. *Todd, supra; Saltarelli v. Bob Baker Group Medical Trust*, 35 F.3d 382 (9th Cir.1994).

Here, appellant seeks coverage under the policy provision which provides coverage for "bodily injury caused by an accident occurring while this policy is in force as to the insured and resulting directly and independently of all other causes in loss covered by this policy." The trial court interpreted this provision to mean that appellant was required to demonstrate that an accident was the direct and independent cause of his brain damage. After hearing all the evidence, the trial court found that appellant's disability resulted exclusively from repeated episodes of hypoglycemia associated with diabetes. The trial court found incredible appellant's assertion that his disability resulted from a head injury sustained when he allegedly fell over a wastepaper can at the Ebasco office. Having found that appellant's disability resulted exclusively from repeated episodes of hypoglycemia, the trial court concluded that there was no accident which caused appellant's

---

**2.** Under ERISA, the "savings clause" exempts from preemption "any law of any state which regulates insurance." 29 U.S.C. § 1144(b)(2)(A). However, "state laws of insurance policy interpretation do not qualify for the 'savings clause' exception and are preempted. The interpretation of ERISA insurance polices is governed by a uniform federal common law." *McClure*, 84 F.3d at 1132–1133. It is well-settled that group disability insurance policies like the one at issue in this case are ERISA insurance policies, and, therefore, the policy at issue is governed by federal common law. *McClure, supra.*

disability independent of his diabetes (a preexisting disease). Therefore, the trial court determined that under the dictates of the policy appellant did not suffer "a bodily injury caused by an accident resulting directly and independently of all other causes." We find that this was not error.

From the clear, express language of the policy, coverage is provided for "bodily injury caused by an accident ... resulting directly and independently of all other causes...." Because the policy unambiguously states that coverage is limited to accidents resulting "directly and independently of all other causes," the trial court did not err in examining and using these words in determining appellant's coverage under the policy. *See McClure, supra* (the unambiguous language of the policy controls). We must next determine whether the trial court's interpretation and application of this phrase to the facts of this case was error.

Recently, in *McClure v. Life Ins. Co. of N. Am.*, 84 F.3d 1129 (9th Cir.1996), the United States Court of Appeals for the Ninth Circuit examined the extensive and conflicting federal law regarding the interpretation of accident policies. Specifically, the court analyzed the numerous tests which have emerged concerning coverage of preexisting conditions and the interpretation of the phrase "accidental body injury resulting directly and independently of all other causes." After a thorough analysis, the federal court fashioned the following rules which guide our resolution of appellant's claim in this case:

> We hold that if the exclusionary language here in question ["directly and independently of all other cause"] is conspicuous, it would bar recovery if a preexisting condition substantially contributed to the disability. This could result in a denial of recovery even though the claimed injury was the predominant or proximate cause of the disability. On the other hand, we hold that if the language ["directly and independently of all other causes"] is inconspicuous, a policy holder reasonably would expect coverage if the accident were the predominant or proximate cause of the disability.

This means that recovery is permitted if the accident was not the remote cause of the injury.

*McClure*, 84 F.3d at 1136.

Here, the parties did not discuss the manner in which the exclusion appeared, nor did the trial court determine whether the "directly and independently" language was conspicuous or buried in general policy language. However, we find that in this case it is unnecessary for us to determine whether the language was conspicuous or buried in general policy language because under both tests appellant must be denied recovery.

■ As stated previously, the trial court found that appellant's brain damage was caused exclusively by his repeated episodes of hypoglycemia associated with diabetes. The trial court further found that appellant's allegation of falling over the wastepaper can, even if true, was not related in anyway to his disability. As such, applying the rules enunciated in *McClure*, appellant is barred from recovery because his diabetes (a preexisting disease) substantially contributed to his brain damage and it was the predominant or proximate cause of his brain damage. *See McClure, supra; Henry v. Home Ins. Co.*, 907 F.Supp. 1392 (C.D.Cal.1995). Accordingly, we find that the trial court did not err in denying appellant coverage because his disability was not "caused by an accident resulting directly and independently of all other causes." [3]

■ Appellant's next contention is that a new trial is warranted because the trial court's verdict was contrary to the weight of the evidence. "The grant of a new trial is within the

3. We note that in this case the parties stipulated that New York law was applicable because that is where the insurance contract was issued. Accordingly, the trial court analyzed the "directly and independently" clause under the dictates of New York insurance law. As previously discussed, the insurance policy in this case is an ERISA policy, and, therefore, its interpretation is governed by the federal common law. Although the trial court did not interpret the insurance clause in the same manner as this Court, it ultimately reached the proper conclusion denying appellant recovery on the basis of the facts in this case. Since we have the power to affirm the trial court's correct decision on any legal basis, we affirm the trial court's conclusion of law on the basis of the aforementioned analysis. *Commonwealth v. Shaw*, 494 Pa. 364, 431 A.2d 897 (1981).

sound discretion of the trial judge, who is present at the offering of all relevant testimony, but his discretion is not absolute. This Court will review the trial court's action and will reverse if it determines that the trial court abused its discretion." *Burrell v. Philadelphia Electric Co.*, 438 Pa. 286, 265 A.2d 516, 517 (1970) (citation omitted). A new trial will be granted on the grounds that the verdict is against the weight of the evidence "only where the verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.... [The appellant] is not entitled to a new trial where the evidence is conflicting and the [finder of fact] could have decided either way." *Gottfried v. American Can Co.*, 339 Pa.Super. 403, 489 A.2d 222, 225 (1985).

Here, in order to recover under the policy at issue, appellant was required to prove that he suffered a bodily injury resulting from an "accident resulting directly and independently of all other causes." Based on the evidence presented, the trial court determined that appellant's bodily injury did not result from an accident but was the result of repeated episodes of hypoglycemia associated with diabetes. Our review of the trial record persuades us that the conflicting testimony offered at trial was adequate to support the trial court's verdict for American Home.

At trial, American Home presented the expert testimony of Stanley Schwartz, M.D., an endocrinologist at the Hospital of the University of Pennsylvania, and Stephen Silberstein, M.D., the Chief of Neurology at the Germantown Hospital. Both experts testified that appellant's disability resulted from *repeated* episodes of hypoglycemia (low blood sugar) associated with diabetes. Both experts also testified that appellant's disability could not have resulted from appellant's alleged fall at the Ebasco office. Specifically, Dr. Schwartz testified that in his opinion the likelihood that appellant's brain damage was the result of a head injury was "nil" and that diabetes accounted "for everything."

To further support its position, American Home presented appellant's medical records to establish that appellant had a

lengthy history of diabetes. Appellant's medical records indicated that since 1962, appellant has suffered numerous episodes of hypoglycemia, causing him to enter a semi-comatose or comatose condition. Appellant's medical records further indicated that on the day that appellant allegedly tripped and hit his head while working at the Ebasco office, he was rushed by ambulance to an emergency room. The hospital's records indicated that appellant was treated for "hypoglycemia due to insulin." Similarly, the ambulance call report indicated that the nature of appellant's problem was "diabetic." Although there were specific blocks that the ambulance crew could have marked under "head injury" or "laceration," the blocks remained unchecked.

At trial, appellant testified that he tripped and hit his head at approximately 8:30 a.m. while working at the Ebasco office. He further testified that after he fell, the next event he remembered was being assisted by his co-workers at around 4:45 p.m. when the ambulance arrived. Appellant could not remember whether he had eaten that afternoon.[4] He then testified that his brain damage resulted from either the injury to his head or from his failing to eat that afternoon which resulted in hypoglycemia. He then surmised that if he forgot to eat that afternoon it was because of his head injury. Accordingly, appellant argued that his fall contributed to his hypoglycemia because as a result of the fall he forgot to eat lunch. In any event, whether his brain damage resulted directly from his head injury or from his failure to eat lunch after the fall, appellant argued that his injury was an "accident." Appellant further argued that Dr. Schwartz's and Dr. Silberstein's opinions to the contrary were incorrect, and that the trial court erred in finding their inconsistent testimony credible. We find that under the circumstances in this case, the trial court did not err in finding that a new trial was not required.

It is black letter law in this jurisdiction that a new trial should not be granted because of a mere conflict in testimony,

4. The risk of hypoglycemia is increased when diabetics fail to eat regular meals.

and that the finder of fact is free be believe all, part or none of a witness' testimony. *Burrell, supra.* The trial court did not find credible appellant's testimony that his disability resulted from a head injury he allegedly sustained when he fell over a wastebasket at the Ebasco office. The trial court further found that even if appellant's allegation of falling was true, it was not related in any manner to his disability. Instead, the trial court found credible American Home's expert testimony that appellant's disability was a result of *repeated* episodes of hypoglycemia, which were unconnected to appellant's alleged fall in any manner. We will not disturb this finding on appeal. The fact that there is evidence which appellant believes is inconsistent with the evidence presented by American Home does not justify a conclusion that the trial court's verdict favoring American Home "shocks the conscience" or was "clearly contrary to the law."

Appellant's next contention is that the trial court erred in not permitting him to offer his opinion that semilente is absorbed more slowly than regular insulin.[5] In addition, while offering that opinion, appellant contends that the trial court should have permitted him to quote figures from a diabetic magazine indicating that semilente is absorbed more slowly than regular insulin. Our review of the record indicates that the trial court permitted appellant to testify on the basis of his own personal experience that when he used semilente, it was absorbed more slowly than regular insulin. However, the trial court would not permit appellant to testify concerning figures he read in a diabetic magazine which supported this argument. We find that this was not error.

"Admissibility of evidence is a matter addressed to the sound discretion of the trial court and an appellate court may reverse only upon a showing that the trial court abused its discretion." *Commonwealth v. Tedford,* 523 Pa. 305, 567

---

5. Appellant alleges that semilente is a type of insulin which is short-acting, meaning that it is absorbed into the body quicker than other types of insulin. He also alleges that this testimony was significant because it could pinpoint at what time during the day he entered his comatose state.

A.2d 610, 621 (1989). In this jurisdiction, "a lay witness' opinion is admissible so long as it is based on his perception of that which he observes and would be helpful in clarifying an ultimate fact for the trier." *McKee by McKee v. Evans,* 380 Pa.Super. 120, 551 A.2d 260, 268 (1988). Even though a lay witness' opinion is admissible, statements contained therein must comport with the other relevant rules of evidence, including the hearsay rule. *Hammel v. Christian,* 416 Pa.Super. 78, 610 A.2d 979 (1992).

■ We find that the trial court properly permitted appellant to testify on the basis of his own personal experience that when he used semilente it was absorbed more slowly than regular insulin because such an opinion was based on his perception and was helpful to the trier of fact. *McKee, supra.* We also find that the trial court properly precluded appellant from quoting figures from a magazine to support his argument concerning semilente. Such testimony would have been inadmissible hearsay because it was an out-of-court-statement offered to prove the truth of the matter asserted. *Hammel, supra* (hearsay is an out-of-court-statement, verbal or written, offered to prove the truth of the matter stated).

■ Appellant's final contention is that the trial court improperly excluded Dr. Allen Zechowy's videotaped deposition. At trial, the trial court admitted a written transcript of Dr. Zechowy's deposition, but it excluded a videotape containing his deposition. According to Pa.R.Civ.P. 4017.1(g) "a videotape deposition of a medical witness or any witness called as an expert, other than a party, *may* be used at trial for any purpose whether or not the witness is available to testify." (emphasis added). Moreover, as discussed previously, under the dictates of Pennsylvania law, the admissibility of evidence is a matter addressed to the sound discretion of the trial court. *Tedford, supra.*

Our review of the record reveals that appellant did not present this issue to the trial court in either of his post-trial

motions.[6] Because this issue was raised for the first time on appeal, the trial court never addressed appellant's contention that it was error to exclude Dr. Zechowy's videotaped deposition. Therefore, the trial court's reasons for excluding the videotaped deposition do not appear in the record. Appellant's failure to raise this claim in either of his post-trial motions prevents us from making a meaningful review of the claim, and, accordingly, we find that appellant has waived this issue on appeal. *Dollar Bank v. Swartz,* 540 Pa. 369, 657 A.2d 1242 (1995) (appellate court will deem waived issues which were not presented in post-trial motions; an appellate court does not sit to review questions that were neither raised nor considered in the trial court). "This is not a rule without a reason. To maximize our efficiency and to maintain and enhance the quality of our dispute resolution process, strict compliance with the procedures designed for issue preservation is essential." *Dollar Bank,* 657 A.2d at 1245.

For all of the foregoing reasons, we affirm the trial court's Order denying appellant's request for a new trial.

Affirmed.

---

6. We note that in his March 6, 1995 post-trial motion, appellant asserted that "plaintiff had expected to use the video of Dr. Zechowy to compete with the live testimony of the defense's doctors." This assertion was not made to argue that the trial court improperly excluded Dr. Zechowy's videotaped deposition. Rather, the assertion was made to enhance appellant's argument that the trial court erred in ruling that depositions were to be read during the trial at some point later than the presentation of the case.