Michael J. PETRASOVITS, Appellee,

v.

Laurence I. KLEINER, M.D., Richard M. Katz, M.D., Richard M. Katz, Joseph E. Scogna, Neurosurgical Associates, Albert Einstein Medical Centers, Appellants.

Michael J. PETRASOVITS, Appellee,

v.

Laurence I. KLEINER, M.D., Appellant.

Superior Court of Pennsylvania.

Argued Sept. 16, 1998.

Filed Oct. 28, 1998.

---

Rebecca D. Ward, Philadelphia, for appellants.

J. Craig Currie, Philadelphia, for appellee.

Before KELLY, EAKIN and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

In November 1988, appellee Michael J. Petrasovits suffered a work-related back injury while employed as a hospital orderly. After 16 months of physical therapy and rehabilitative treatment, appellee consulted appellant Dr. Laurence I. Kleiner, a neurosurgeon. Appellant recommended and performed back surgery on appellee, who claimed that his condition worsened as a result of that surgery. Appellee's medical malpractice suit based liability on three theories: (1) negligent performance of surgery; (2) lack of informed consent; and (3) negligence in recommending surgery. The court granted nonsuit on the theory of negligent performance and the jury rejected the lack of informed consent theory. The jury, however, found appellant liable in malpractice for recommending back surgery to appellee. The jury awarded appellee $908,000.00.[1]

Appellant filed post-trial motions seeking judgment n.o.v., a new trial, or remittitur. The court's order dated September 30, 1997, entered judgment on the jury verdict and denied appellant's motion for judgment n.o.v. The court subsequently entered another order on November 18, 1997, which amended the September order and denied appellant's remaining post-trial motions. Appellant filed this timely appeal.

Based on the "two schools of thought" doctrine, appellant requests judgment n.o.v. or, in the alternative, a new trial because the verdict was against the weight of the evidence. Additionally, appellant seeks a new trial based on alleged trial court error in: (1) excluding notes written by medical personnel; (2) prohibiting cross-examination of appellee's medical expert about suspension from a professional association for rendering improper testimony in a previous case; (3) allowing appellee's expert to testify beyond the fair scope of his pretrial report; and (4) improperly instructing the jury on the "two schools of thought" doctrine. Further, appellant requests remittitur or a new trial because the verdict was excessive.

## "TWO SCHOOLS OF THOUGHT" DOCTRINE

Appellant first contends that he is entitled to judgment n.o.v., or in the alternative, to a new trial based on the "two schools of thought" doctrine. In *Jones v. Chidester*, 531 Pa. 31, 610 A.2d 964 (1992), our Supreme Court held that the "two schools of thought doctrine" is a defense to malpractice because "a physician will not be held responsible if in the exercise of his judgment he followed a course of treatment advocated by a considerable number of recognized and respected professionals in his given area of expertise." *Id.* at 969. Appellant argues that appellee's own medical expert admitted that a considerable number of respected neurosurgeons would have found appellee a suitable candidate for surgery and, therefore, pursuant to the "two schools of thought" doctrine defense, appellant could not be found liable for recommending surgery. Thus, appellant asserts that he is entitled to judgment n.o.v. In his alternative argument, appellant claims that the vast weight of the evidence showed that a considerable number of respected neurosurgeons would have recommended the surgery to appellee, thus protecting appellant from liability under the "two schools of thought" doctrine. Alleging that the verdict was against the weight of the evidence, appellant seeks a new trial.

### A. JUDGMENT N.O.V.

■ As we stated in *Neal by Neal v. Lu*, 365 Pa.Super. 464, 530 A.2d 103, 110 (1987), "[t]he entry of judgment notwithstanding a jury verdict to the contrary is a drastic remedy. A court cannot lightly ignore the findings of a duly-selected jury." Consequently, we employ the following standard of review where a trial court denies a motion for judgment n.o.v.:

"[T]he evidence must be considered in the light most favorable to the verdict winner, and he [or she] must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his [or her]

1. This award was molded to $1,154,067.98 in order to include delay damages.

favor." We should not reach a decision based on how we would have voted but on the facts as presented in light of the jury's determinations. A judgment n.o.v. is proper if the movant is entitled to judgment as a matter of law or if the evidence was such that no two reasonable minds could disagree that the verdict was improper.

*Struble v. Valley Forge Military Academy,* 445 Pa.Super. 224, 665 A.2d 4, 6 (1995) (quoting *Moure v. Raeuchle,* 529 Pa. 394, 604 A.2d 1003, 1007 (1992)) (citations omitted).

■ Appellant claims that under the "two schools of thought" doctrine he is entitled to judgment n.o.v. because appellee's own medical expert admitted that a considerable number of respected neurosurgeons would have found appellee a suitable candidate for surgery. Despite appellant's attempts to manipulate Dr. Austin's trial testimony to support his argument, our review of the evidence finds that appellee's medical expert never made such an admission. Appellant highlights testimony from Dr. Austin wherein the medical expert agreed that a number of respected doctors in the field would recommend surgery to a patient who had radicular type pains all the way up to the day of surgery and who had at least one radiographic study indicating nerve root displacement. Dr. Austin, however, stated that there was no hard evidence that appellee had radicular type pain, as premised in counsel's hypothetical. Additionally, Dr. Austin testified that a reasonable group of respected neurosurgeons would not have offered surgery to a patient such as appellee. Therefore, there was evidence presented by appellee that the "two schools of thought" doctrine was not a viable defense for appellant. Thus, appellant was not entitled to the judgment n.o.v. as a matter of law.

### B. WEIGHT OF EVIDENCE

■ Alternatively, appellant requests a new trial because the verdict was against the weight of the evidence. Appellant argues that the vast weight of the evidence presented supports his "two schools of thought" defense, thus entitling him to a new trial.

■ A party is entitled to a new trial based on the weight of the evidence

"only where the verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.... [The appellant] is not entitled to a new trial where the evidence is conflicting and the [finder of fact] could have decided either way."

*Watson v. American Home Assurance Co.,* 454 Pa.Super. 293, 685 A.2d 194, 198 (1996) (quoting *Gottfried v. American Can Co.,* 339 Pa.Super. 403, 489 A.2d 222, 225 (1985)), *app. denied,* 549 Pa. 704, 700 A.2d 443 (1997).

In the instant case, there was evidence that respected neurosurgeons would not have recommended surgery to appellee. Appellant's ability to present opposing evidence does not entitle him to a new trial. It is within the jury's province to choose which evidence to accept and which evidence to reject. Furthermore, our sense of justice is not shocked by the jury's verdict.

### EXCLUSION OF LETTERS WRITTEN BY NURSE LYNCH

Next, appellant argues that the trial court erred in excluding notes written by Nurse Lynch.[2] Appellant wished to introduce these notes as prior inconsistent statements in order to impeach appellee's credibility. Specifically, appellant asserts that these statements contradicted appellee's testimony that appellant was the first to discuss surgery with appellee.

■ Appellant sought to admit notes written by Nurse Lynch that purportedly set forth statements made by appellee. In order to be admissible, both the underlying statements by appellee and Nurse Lynch's notes themselves must be admissible. *See Commonwealth v. Mescall,* 405 Pa.Super. 326, 592 A.2d 687, 690 (1991). The statements by

---

**2.** Appellant also complains of the exclusion of notations made by Dr. Stein and Dr. Band in medical records. Appellant made no attempt to admit these notes into evidence. Furthermore, these notes would also be inadmissible for the same reasons set forth regarding Nurse Lynch's notes.

appellee would be admissible. Nurse Lynch's notes, however, were not admissible. Although appellee stipulated that the notes were in fact written by Nurse Lynch, appellant made no attempt to qualify these notes as business records or show they met any other exception to the rule against hearsay. Thus, the trial court properly excluded this evidence.

## CROSS–EXAMINATION OF DR. AUSTIN

Appellant alleges trial court error in prohibiting the cross-examination of appellee's expert regarding his suspension from the American Association of Neurological Surgeons for giving improper testimony in another case. Appellant argues that this evidence was relevant and admissible to impeach the credibility of Dr. Austin.

■ Generally, in Pennsylvania a witness may not be impeached through evidence of specific instances of conduct which have not resulted in a conviction. *See Commonwealth v. Fried*, 382 Pa.Super. 156, 555 A.2d 119, 123 (1989). A witness's credibility may be impeached, however, through evidence of reputation for untruthfulness. *Commonwealth v. Peer,* 454 Pa.Super. 109, 684 A.2d 1077, 1083 (1996).

■ Here, appellant wished to impeach Dr. Austin's credibility by using a specific instance of conduct that has not resulted in a conviction. This was an improper method of impeaching Dr. Austin's credibility. Thus, introduction of this evidence was properly excluded.

## TESTIMONY BEYOND FAIR SCOPE OF EXPERT REPORT

Appellant alleges that appellee's medical expert, Dr. Austin, was permitted to testify beyond the fair scope of his pretrial report during the following exchange on direct examination:

Q: When a surgeon operates on the low back and finds evidence of nerve root impingement, is it customary for the surgeon to make a note of that in the operative note?

A: Yes.

Appellant claims that this testimony regarding operative notes was not part of Dr. Austin's pretrial report and should therefore have been excluded. Appellant contends that this testimony prejudiced him in that "[w]ithout advance notice that an attempt would be made to criticize the operative note as part of the expert's presentation, [appellant] was unable to present testimony to counter his opinion." Appellant's brief, at 42.

■ Admission of expert testimony is within the trial court's sound discretion and we will not disturb that decision without a showing of manifest abuse of discretion. *Walsh v. Kubiak*, 443 Pa.Super. 284, 661 A.2d 416, 419 (1995) (en banc). An expert's testimony on direct examination is to be limited to the fair scope of the expert's pre-trial report. *Id.*; Pa.R.Civ.P. 4003.5. In applying the fair scope rule, we focus on the word "fair." *Jones v. Constantino*, 429 Pa.Super. 73, 631 A.2d 1289, 1294–95 (1993) (quoting *Dible v. Vagley*, 417 Pa.Super. 302, 612 A.2d 493, 499 (1992)). Departure from the expert's report becomes a concern if the trial testimony "would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the response." *Id.* Therefore, the opposing party must be prejudiced as a result of the testimony going beyond the fair scope of the expert's report before admission of the testimony is considered reversible error. *Id.* 631 A.2d at 1295. We will not find error in the admission of testimony that the opposing party had notice of or was not prejudiced by. *See Boyce v. St. Paul Property & Liability*, 421 Pa.Super. 582, 618 A.2d 962, 968 (1992) (finding no abuse of discretion in permitting testimony that expert testified to during pretrial depositions as opposing party was on notice).

■ The implication of the testimony to which appellant complains is that appellant made no notation in the operative note of nerve root impingement because he saw no evidence of it during surgery. Appellant himself testified that he found no evidence of nerve root impingement during surgery. Thus, there was no prejudice to appellant by the admission of Dr. Austin's testimony.

## JURY INSTRUCTION

Appellant next contends that the trial court erred in its jury charge regarding the "two schools of thought" doctrine. Appellant alleges that the charge was confusing and misleading. Appellant bases this allegation on the clarification questions posed by the jury on this issue and the court's recharge and curative instruction. Appellant claims prejudice because this doctrine was central to his defense.

 When reviewing a claim of error in the trial court's jury charge, we

> determine whether the trial court committed clear abuse of discretion or error of law controlling the outcome of the case. Error in a charge is sufficient ground for a new trial, if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. A charge will be found adequate unless "the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error." A reviewing court will not grant a new trial on the ground of inadequacy of the charge unless there is a prejudicial omission of something basic or fundamental.

*Stewart v. Motts*, 539 Pa. 596, 654 A.2d 535, 540 (1995) (citations omitted).

The trial court originally instructed the jury as follows:

> You've heard some evidence regarding existence of two reasonable and respected bodies of medical opinion. I believe counsel argued about two schools of thought. If there are two respected ways of performing a medical procedure or not performing a medical procedure exists in the medical community and both have validity and are recognized generally by medical specialists, say, in the field of neurosurgery, that either choice is an acceptable choice. It's not a question of whether they'd be equally acceptable. As long as there is a sufficient reasonable body of people who believe one way as opposed to the other way.

> Because a physician chooses one school of thought as opposed to another and the result comes out not good, that doesn't mean there's liability.

Jury Charge, 7/29/96, at 29–30.

After appellee objected to the exclusion of one of his submitted points, the judge added:

> One thing I forgot to instruct you which I intended to do is that you cannot consider Doctor Stein's opinion that the plaintiff was a candidate or suitable candidate for surgery, nor Doctor Scogna's opinion, the second opinion after Doctor Kleiner had recommended surgery. You cannot use Doctor Scogna nor Doctor Stein's opinions in determining whether or not Doctor Kleiner was negligent in recommending surgery. This is his decision, and you decide the case based upon his decision, not somebody else's decision in a case such as this.

*Id.* at 42.

A request for clarification was received from the jury that read:

> "Is Doctor Kleiner required to adhere to his professed standard of care as given by his testimony, or can that be disregarded as as [sic] long as as [sic] his actions fall in line with what a respected number of neurosurgeons might have done?"

*Id.* at 59.

Presuming that the jury wanted clarification of the "two schools of thought" doctrine, the court restated the instruction for the jury.

> A physician has the right to practice his or her profession in accordance with any body of medical opinion which is supported by reasonable and respected opinion.

> Where competent medical authority is divided, meaning there are two separate respected opinions on how to do things, a physician will not be liable to a plaintiff if in the exercise of his or her judgment he or she follows a course of treatment supported by a considerable number of reputable and respected neurosurgeons.

> If you find that Doctor Kleiner in his treatment is supported by such reasonable and respected medical opinion, then you must find in his favor against the plaintiff

with regard to the issue of whether or not the plaintiff was a proper candidate for surgery.

A physician may rightfully choose to practice his or her profession in accordance with a school of thought which differs in its concepts and procedures from another school of thought. Even though the school that he follows is a minority one, he will still not be deemed to be negligent or practicing improperly so long as it is advocated by a considerable number of reasonable medical experts.

This does not mean that you are to consider the opinions of Doctor Stein. Remember, Doctor Stein rendered an opinion months and months before, up until about five months before Doctor Kleiner treated the plaintiff. So, really, Doctor Stein's opinion is not to be considered in any way by you in determining whether or not he is part of an accepted school of thought. That's to be totally disregarded in so far as deciding this part of the question.

Furthermore, you're not to consider any inference you may draw or you shouldn't make any inference from the fact that Doctor Scogna on behalf of the insurance carrier approved of the surgery. He wasn't here to testify. He wasn't deposed through deposition. He wasn't cross-examined. So totally ignore whatever inference you might draw from the fact that he approved of the surgery.

Jury Charge, 7/29/96, at 71–73.

█ This clarification fairly, accurately, and adequately instructed the jury on the applicable law. This instruction did not mislead or omit any material point on the "two schools of thought" doctrine. Thus, there was no error in the jury instruction to warrant the granting of a new trial.

## EXCESSIVE VERDICT

Finally, appellant asserts that he is entitled to remittitur because the $908,000.00 award, solely for pain and suffering, is grossly excessive. As appellant points out, appellee suffered from a back injury prior to having the surgery. Thus, any award for appellee would be limited to the additional damage caused by the surgery. Appellant describes appellee's life after the initial back injury, but prior to the surgery, as involving limited abilities to fully participate in activities, discomfort, and depression. Appellant contends that appellee's life following the surgery is not much different than life prior to the surgery and therefore the award of $908,000.00 was excessive for the slight increase in pain and suffering caused by the surgery.

█ It is within the discretion of the trial court to grant a new trial because the verdict is excessive. *Botek v. Mine Safety Appliance Corp.*, 531 Pa. 160, 611 A.2d 1174, 1176 (1992). We will not disturb the trial court's refusal to grant a new trial on the grounds that the verdict is excessive unless the court clearly abused that discretion. *Id.* In *Harding v. Consolidated Rail Corp.*, 423 Pa.Super. 208, 620 A.2d 1185 (1993), we stated:

In determining whether a verdict is excessive a court may consider the following factors: (1) the severity of the injury; (2) whether the injury is manifested by objective physical evidence or whether it is only revealed by the subjective testimony; (3) whether the injury is permanent; (4) whether the plaintiff can continue with his or her employment; (5) the size of out-of-pocket expenses; (6)[t]he amount of compensation demanded in the original complaint. However, as each case is unique, the court should apply only those factors which are relevant to that particular case before determining if that verdict is excessive.

*Id.* at 1193 (citations omitted).

█ Evidence elicited at trial belies appellant's assertion that appellee's pain and suffering was only slightly increased as a result of the surgery. Among other problems, appellee suffers increased pain and can no longer enjoy activities that he was able to participate in prior to the surgery. Appellee now takes a considerable amount of medication that affects his ability to concentrate and has had to change his career plans. Further, appellee is withdrawn from friends and family unlike before and is now so severely depressed as to contemplate suicide.

The evidence adduced at trial clearly supports a substantial increase in appellee's pain and suffering after the surgery. Given the factors relevant to this case, the evidence supported the jury's award. Thus, the trial court did not abuse its discretion in refusing to grant a new trial based on an excessive verdict.

## CONCLUSION

For the foregoing reasons, appellant is not entitled to judgment n.o.v., a new trial, or remittitur. Orders affirmed.