Janice COFFEY and Robert Coffey, Wife and Husband, Appellants,

v.

MINWAX COMPANY, INC., Appellee.

Superior Court of Pennsylvania.

Argued June 6, 2000.
Filed Dec. 18, 2000.

**618**

Ronald M. Graham, Valley Forge, for appellant.

Eugene Hamill, Philadelphia, for appellee.

Before JOHNSON, STEVENS and BECK, JJ.

STEVENS, J.:

¶ 1 This is an appeal from the judgment entered in the Court of Common Pleas of Chester County following the denial of Appellants' post-trial motions. We affirm.

¶ 2 The relevant facts and procedural history are as follows: Appellant Janice Coffee allegedly sustained injuries while using Minwax Antique Refinisher, a product manufactured by Appellee. She alleged that the product burst into flames while she was applying the product to woodwork in a room in her house.

¶ 3 On October 25, 1993, Appellants filed a complaint alleging that Appellee was negligent and strictly liable for, *inter alia*, failing to manufacture the product proper-

ly, provide adequate warnings and instructions, and test the product adequately.[1] Appellee filed an answer, and, on April 19, 1996, Appellee filed a motion for partial summary judgment as to Appellants' claim that Appellee failed to provide proper warnings. Specifically, Appellee claimed that the label found on the Minwax product complied with the Federal Hazardous Substances Act (FHSA), 15 U.S.C. § 1261 *et seq.*, and, therefore, Appellants' state common law claims regarding warnings/labeling were preempted.

¶ 4 The trial court initially denied the partial summary judgment motion, but Appellee filed a motion for reconsideration in light of this Court's decision in *Romah v. Hygienic Sanitation Company*, 705 A.2d 841 (Pa.Super.1997), *affirmed*, 558 Pa. 378, 737 A.2d 249 (1999). Subsequently, after reconsidering the matter, the trial court granted Appellee's motion for partial summary judgment on December 2, 1998, and struck Appellants' claims regarding the warnings/labeling for the Minwax product.

¶ 5 The remaining claims were tried before a jury, and, on January 6, 1999, the jury returned a verdict in favor of Appellee, thereby concluding that Appellee was not negligent or strictly liable. Appellants filed a post-trial motion,[2] which was denied, and judgment was entered. This appeal followed, the trial court ordered Appellants to file a statement pursuant to Pa.R.A.P. 1925(b), such a statement was filed,[3] and the trial court filed an opinion.

■ ¶ 6 Appellants' first claim is that the trial court erred in granting Appellee's motion for partial summary judgment with regard to Appellants' claims that Appellee failed to properly warn/label the Minwax

---

1. Robert Coffey, Janice Coffey's husband, alleged loss of consortium. Further, the Coffey's raised various claims against Servistar Corporation and Martin Clompus, individually and d/b/a Tarrytowne Servistar Hardware and I.M. Clompus Partnership. Servistar Corporation was a wholesaler for the Minwax product at issue, and Martin Clompus sold Janice Coffey the Minwax.

2. We note that all of the issues raised on appeal were raised in Appellants' post-trial motion.

3. We note that all of the issues raised on appeal were raised in Appellants' Pa.R.A.P. 1925(b) statement.

product. Based on this Court's decision in *Romah, supra,* we disagree.[4]

¶ 7 In *Romah,* this Court examined the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136 *et seq.,* and concluded that the FIFRA preempted any state common law cause of action that rests on an alleged failure to warn or convey information. In so concluding, this Court stated the following:

The doctrine of federal preemption is founded on the Supremacy Clause, United States Constitution art. VI, cl. 2. Federal laws are the supreme law of the land; thus, any "state law that conflicts with the federal law is 'without effect.' "

A state law is preempted when: (1) Congress expresses a clear intent to preempt state law; (2) when there is outright or actual conflict between the federal and state law; (3) when compliance with the federal and state law is effectively impossible; (4) where there is an implicit federal barrier to state regulation; (5) where Congress has occupied the entire field of regulation; [or] (6) where state law "stands as an obstacle" to the objectives of Congress. The key question is whether Congress intended to preempt state law. Congressional intent may be express or implied:

Congress' intent may be explicitly stated in the statute's language or implicitly contained in its structure and purpose.... In the absence of an express congressional command, state law is preempted if that law actually conflicts with federal law..., or if federal law so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no room for the States to supplement it.'

"Absent express preemption, courts are not to infer preemption lightly, particularly in areas traditionally of core concern to the states such as tort law." This is because the preemption doctrine presumes that police powers historically left to the states are not supplanted by federal law.

*Romah,* 705 A.2d at 849 (citations and quotations omitted).

¶ 8 This Court then examined 7 U.S.C. § 136v, which contained the language of the FIFRA in question and which provided the following:

(a)In general

A state may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

(b) Uniformity

Such state shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

¶ 9 Based on the law discussed *supra,* this Court in *Romah* concluded that Congress expressly provided that state law claims regarding labeling were preempted by federal law.

¶ 10 The statute at issue in the case *sub judice* requires labeling of certain consumer products intended for use in the household and provides the following:

If a hazardous substance or its packaging is subject to a cautionary labeling requirement under [the FHSA] designed to protect against a risk of illness or injury associated with the substance, no State or political subdivision of a State may establish or continue in effect a cautionary labeling requirement applicable to such substance or packaging and designed to protect against the same

---

4. In reviewing the grant of summary judgment, we will reverse only if the trial court abused its discretion or committed an error of law. *Merriweather v. Philadelphia Newspapers, Inc.,* 453 Pa.Super. 464, 684 A.2d 137 (1996). Summary judgment is proper where there is no dispute over a material issue of fact and the party is entitled to judgment as a matter of law. *Merriweather, supra.* Here, the facts were not in dispute; but rather, the court concluded as a matter of law that partial summary judgment should be granted.

risk of illness or injury unless such cautionary labeling requirement is identical to the labeling requirement under [the FHSA].

15 U.S.C. § 1261, note (b)(1)(A) (1988).

¶ 11 We conclude that the language in the FHSA is effectively indistinguishable from the language in the FIFRA, and, therefore, under *Romah*, we conclude that the trial court properly granted summary judgment with regard to the warning/labeling claims advanced by Appellants.

■ ¶ 12 Appellants' next claim is that, during the jury trial regarding the claims which were not subject to the summary judgment order, the trial court improperly permitted Appellee to illustrate various products during closing argument since such products were not introduced into evidence or listed as exhibits on Appellee's pre-trial memorandum.[5] Appellants contend that because they were not given prior notice as to the use of the products they were unable to prepare a proper defense, and, as a result, they were prejudiced.[6]

■ ¶ 13 "While counsel usually has great latitude in his closing argument, he may not present facts to the jury not in evidence and which are prejudicial to the opposing party." *Millen v. Miller*, 224 Pa.Super. 569, 308 A.2d 115, 117 (Pa.Super.973) (citations omitted).

¶ 14 In the case *sub judice*, a central theme of Appellee's defense was to undermine the opinion of Appellants' expert witness, David Graves, who had a master and doctoral degree in chemical engineering. Dr. Graves stated that Minwax was a defective product because it could have been made with less flammable components. N.T. 1/5/99 at 325. Appellee countered Dr. Graves' opinion with its own expert

witness, Lennard Wharton, who had a master and doctoral degree in chemistry. Dr. Wharton testified, without objection, that if Minwax was defective on the basis provided by Dr. Graves, then a multitude of common products, such as nail polish and hair spray, should be taken off the market, because they also are extremely flammable or flammable. N.T. 01/06/99 at 458. Appellee illustrated this point again during closing argument by displaying everyday products to the jury, such as hairspray and paints, which, in Appellee's opinion, are highly flammable and still regarded as safe.

¶ 15 Based on the aforementioned, we find Appellants' contention that they were unfairly surprised by Appellee's use of hairspray and paint during closing argument to be meritless. It is clear that Dr. Graves specifically testified with regard to the product during trial.

■ ¶ 16 Appellants' next issue is that the trial court erred in denying their motion *in limine* seeking to preclude Dr. Wharton from testifying as to the scientific tests, personal tests, and electrostatic discharge information relied upon for his opinion. Specifically, Appellants contend that they were not provided with an expert report pertaining to Dr. Wharton's electrostatic discharge information, and, therefore, they were unfairly surprised at trial when Dr. Wharton testified as to this information.

The [a]dmission of expert testimony is within the trial court's sound discretion and we will not disturb that decision without a showing of manifest abuse of discretion. An expert's testimony on direct examination is to be limited to the fair scope of the expert's pre-trial report. In applying the fair scope rule, we

---

5. Although we have concluded the trial court properly granted summary judgment as to Appellants' warning/labeling claims, we must review Appellants' remaining issues raised on appeal since the summary judgment was partial in nature and the other claims were litigated before a jury.

6. We note that Appellants properly objected to Appellee's closing argument during trial. N.T. 1/6/99 at 582–583.

focus on the word "fair." Departure from the expert's report becomes a concern if the trial testimony "would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the response." Therefore, the opposing party must be prejudiced as a result of the testimony going beyond the fair scope of the expert's report before admission of the testimony is considered reversible error. We will not find error in the admission of testimony that the opposing party had notice of or was not prejudiced by.

*Petrasovits v. Kleiner,* 719 A.2d 799, 804 (Pa.Super.1998) (citations omitted).

¶ 17 Here, Appellee provided Appellants with supplemental answers to expert witness interrogatories which provided Dr. Wharton's opinion that there was *insufficient evidence to conclude the fire had been caused by static electricity* and that a more likely cause of the fire was the energization of an electrical appliance. Accordingly, Appellants had ample notice of Dr. Wharton's prospective testimony so that they could prepare a meaningful response.

¶ 18 Appellants' next contention is that the trial court improperly permitted Appellee to introduce negligent concepts (contributory negligence) into a strict liability case.[7] Specifically, Appellants contend that the trial court erred in permitting Dr. Wharton to testify that the most likely cause of the fire was that Appellant Janice Coffee either inserted or withdrew a plug from an electrical outlet in a wall near the vicinity of the fire.

¶ 19 Dr. Wharton's testimony was not admitted for the purpose of showing that Ms. Coffee was careless in using Minwax, which arguably would have been an impermissible consideration in the case *sub judice. Id.* Instead, the testimony was admitted on the question of causation. Appellee was entitled to provide an alternative theory as to the cause of the fire. Evidence that is inadmissible for one purpose is not inadmissible for all purposes. *Bialek v. Pittsburgh Brewing Co.,* 430 Pa. 176, 242 A.2d 231 (1968). Accordingly, Dr. Wharton's testimony, which in a different context might have served as proof of negligence on the part of Ms. Coffey, should not be rendered inadmissible simply because Appellants pursued a strict liability claim. It was, instead, admissible to rebut Appellants' claim as to either defect or proximate causation.

¶ 20 Appellants' next argument is that the trial court erred in charging the jury with Appellee's requested instructions. Specifically, Appellants contend that the trial court erred in instructing the jury as follows:

> When you decide the question of causation, you must also consider whether the consequences of the accident may be explained by reasons other than a defect in the product. If the cause of the accident was something other than the defect alleged by the plaintiffs, your verdict must be for the defendant.

> \* \* \*

> The mere fact that the product presents a risk of injury to the user of it does not mean that the product is defective in the legal sense of the term. Every product has some potential to cause harm. An ordinary table knife, for example, can cause an injury in the course of its normal use, but that doesn't make that table knife defective, or make their manufacturer liable for any injury. Similarly, driver error can and does cause many accidents. That does not mean motor vehicles in general are unsafe for their intended use.

> \* \* \*

> You have heard testimony from plaintiff's expert criticizing the defendant for

---

7. This issue was properly preserved at trial.

N.T. 1/6/99 at 332–333.

not making a safer product. That is not for you to apply in deciding whether the defendant's product was defective. That is because the law does not require a manufacturer to make an already safe product somewhat safer, or to use the safest of all possible designs.

N.T. 1/6/99 at 613, 610–611, 613. We find Appellants' challenges to the jury instruction to be waived.

¶ 21 Pennsylvania Rule of Appellate Procedure 302, requisites for reviewable issue, provides the following:

> **(a) General Rule.** Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.

> **(b) Charge to Jury.** A general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of.

¶ 22 We have reviewed the certified record and discovered the following exchange occurred after the instruction was given:

> ***TRIAL COURT:*** Counsel, you want to take exception to my charge?

> ***APPELLANTS' COUNSEL:*** Yes, your Honor. My objection is, I would like to renew now, concerning all of the jury instructions read by the Court proposed by defense, which were not standard jury instructions.

N.T. 1/6/99 at 627.

¶ 23 We conclude that Appellants' objection to the instruction was not made with the specificity required by Pa.R.A.P. 302. Moreover, we have reviewed the record and cannot locate the objection which Appellants were attempting to renew.[8]

■■■■ ¶ 24 Appellants' final claim is that Appellee's counsel improperly asked the following two questions during the cross-examination of Dr. Graves:

(1) "If I told you that 300,000 quarts of [Minwax] ha[s] been produced and sold in the last ten years without a single incidence of fire, would you still say it's defective?" N.T. 1/6/99 at 370.

(2) "Now, did it ever occur to you, sir, to ask the question, rather than jumping to the conclusion that the product is defective, that if there were hundreds of thousands of uses of this product without fire, and there is one fire that resulted from a situation where the person has told others that the product was split..." N.T. 1/6/99 at 370.

Appellants claim that the questions resulted in the introduction of evidence for which a proper foundation was not established.

¶ 25 With regard to the first question, Appellants immediately objected to Appellee's counsel's question, and the trial court sustained the objection. Appellants did not ask for a mistrial or request a cautionary instruction, and, therefore, we conclude that they are not entitled to relief on this claim.

¶ 26 With regard to the second question, we find the issue to be waived. At trial, Appellants immediately objected to the question, and the trial court requested a specific reason for the objection. Appellants indicated that they were objecting because the question "introduc[ed] improper elements into a strict liability case." N.T. 1/6/99 at 376. Appellants failed to inform the court that they were objecting because the question introduced facts without a foundation, as is argued on appeal. It is well settled that a party may not raise an argument for the first time on appeal. *See* Pa.R.A.P. 302. Since Appellants failed to raise the precise argument raised on appeal before the trial court, we find the issue to be waived.

---

**8.** In their post-trial motion and appellate brief, Appellants contend that they specifically objected to the jury instruction during an off-the-record discussion held in chambers. *See* Appellants' brief at 8. However, since the discussion was not made a part of the certified record, we are not privy to it and cannot review it.

¶ 27 For all of the foregoing reasons, we affirm the judgment and the trial court's order granting partial summary judgment.

¶ 28 Affirmed.