v.

**PENNSYLVANIA STATE POLICE, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 25, 2011.
Filed Jan. 6, 2012.
Reargument Denied Feb. 27, 2012.

---

Eugene J. Julian, Washington, for appellant.

John J. Herman, Harrisburg, for appellee.

BEFORE: MUSMANNO, ALLEN, and MUNDY, JJ.

OPINION BY ALLEN, J.:

In this case, J.C.B. ("Appellant") was denied a permit to purchase a hunting rifle by the Pennsylvania State Police, based on a mental health record indicating a prior involuntary commitment. On appeal, Appellant challenges the order denying the expungement of his mental health record and the reinstatement of his firearm rights, and presents a constitutional challenge to 18 Pa.C.S.A. § 6105(c)(4) of the Pennsylvania Uniform Firearms Act. Finding no trial court error of law, we affirm.

The trial court recounted the pertinent facts of this case as follows:

> The above-referenced case came before the Court on a Petition to restore firearm rights pursuant to 18 Pa.C.S. § 6105(f)(1) and to expunge mental health record of the petitioner, [J.C.B.], pursuant to 18 Pa.C.S. § 6111.1(g)(2).
>
> In April of 2007, [Appellant] went to Sewickley Valley Hospital emergency room for pain he was experiencing in his foot. [Appellant] told the emergency room nurse that he had tried to commit suicide the night before and that he was depressed. [Appellant] was involuntarily committed based on the petition of said nurse and pursuant to 50 P.S. § 7302. The nurse's petition stated, "[Appellant] is very depressed and last p.m. put a gun to his head and pulled the trigger but no bullet came out. He presents today at the [E.R.] very depressed." [Appellant] was then seen by the attending physician whose emergency department report mirrors the report

of the nurse and adds, "[Appellant] has expressed suicidal thoughts and wishes to me, especially holding a gun to his head and pulling the trigger."

The physician also stated [Appellant] had stopped taking his Lexapro. From his examination, the physician found [Appellant] to be "severely mentally disabled and in need of treatment," as the statute requires. 50 P.S. § 7301. The discharge diagnosis was major-depression-moderate-recurrent, alcohol abuse and prior history of opiate abuse in partial remission. [Appellant] denies putting a gun to his head and pulling the trigger.

At the hearing, [Appellant] had a board certified psychiatrist testify that [Appellant] did not present a risk to himself or others as is required by 18 Pa.C.S. § 6105(f)(1). However, the doctor made this statement without the knowledge of [Appellant's] involuntary commitment as stated above and without seeing any of the medical records from the involuntary commitment. The doctor stated at the hearing that knowledge of said event would increase [Appellant's] potential risk of harm to himself.

Trial Court Opinion, 9/24/10, at 1–2.

On appeal, Appellant raises the following issues for our review:

I.   Did the lower court properly interpret the Firearm Prohibition Statute, 18 Pa.C.S.A. § 6105(c)(4), when it found the physician's certification required to invoke a firearm prohibition was executed by an emergency room doctor conducting the initial exam under § 7302(b) of the Mental Health Procedures Act and not by the examining psychiatrist?

II.  If the lower court properly interpreted 18 Pa.C.S.A. § 6105(c)(4), does it violate constitutional rights to procedural due process, substan-

tive due process, right to reputation and right to bear arms in defense of self?

III. Is strict scrutiny the appropriate standard of review since 18 Pa. C.S.A. § 6105(c)(4) restricts an individual's right to bear arms?

Appellant's Brief at 4.

■   Appellant's issues challenge the trial court's statutory interpretation of the Pennsylvania Uniform Firearms Act, 18 Pa.C.S.A. § 6101 *et seq*, including § 6105(c)(4) and other related sections. Statutory interpretation "is a question of law and, as such, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Arroyo*, 991 A.2d 951, 955 n. 2 (Pa.Super.2010).

Initially, we note the Pennsylvania Uniform Firearms Act states in pertinent part:

**§ 6105.  Persons not to possess, use, manufacture, control, sell or transfer firearms**

**(a)  Offense defined.-**

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a firearm in this Commonwealth.

\*      \*      \*

**(c)  Other persons.**—In addition to any person who has been convicted of any offense listed under subsection (b), the following persons shall be subject to the prohibition of subsection (a):

(4) A person who has been adjudicated as an incompetent or who has been involuntarily committed to a mental institution for inpatient care and treatment

under section 302, 303, or 304 of the provisions of the act of July 9, 1976 (P.L. 817, No. 143), known as the Mental Health Procedures Act. This paragraph shall not apply to any proceeding under section 302 of the Mental Health Procedures Act unless the examining physician has issued a certification that inpatient care was necessary or that the person was committable.

18 Pa.C.S.A. § 6105(a)(1) and (c)(4).

Additionally, the Mental Health Procedures Act, ("MHPA"), provides in 50 P.S. §§ 7301 and 7302 [1] that:

§ 7301. **Persons who may be subject to involuntary emergency examination and treatment**

(a) **Persons subject.**—Whenever a person is severely mentally disabled and in need of immediate treatment, he may be made subject to involuntary emergency examination and treatment. A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself.

(b) **Determination of Clear and Present Danger.**-

(2) Clear and present danger to himself shall be shown by establishing that within the past 30 days:

(ii) the person has attempted suicide and that there is a reasonable probability of suicide unless adequate treatment is afforded under this act. For the purposes of this subsection, a clear and present danger may be demonstrated by the proof that the person has made threats to commit suicide and has committed acts which are in furtherance of the threat to commit suicide; ...

§ 7302. **Involuntary emergency examination and treatment authorized by a physician—not to exceed one hundred twenty hours**

(a) **Application for Examination.**— Emergency Examination may be undertaken at a treatment facility upon the certification of a physician stating the need for such examination; ... or without a warrant upon application by a physician or other authorized person who has personally observed conduct showing the need for such examination.

50 P.S. §§ 7301(a), 7301(b)(2)(ii), and 7302(a).

Our review of the Firearms Act and the MHPA, in conjunction with the record of this case, leads us to conclude that the trial court did not misapply the law in denying Appellant's petition to have his firearm rights reinstated and to have his mental health record expunged. The record supports the trial court's determination that Appellant had been involuntarily committed in April of 2007, pursuant to Section 302 of the MHPA, thus prohibiting Appellant from possessing a firearm pursuant to 18 Pa.C.S.A. § 6105(c)(4).

■ Appellant's involuntary commitment arose from his April 26, 2007 statements to Sewickley Valley Hospital emergency room personnel regarding his failed suicide attempt. *See* Appellant's Certified Mental Health Record from DHS of Allegheny County—Application for Involuntary Emergency Examination and Treatment, 4/26/07, at 1–7. The commitment application contained a section entitled

---

1. Also referred to as "Section 302" of the MHPA.

"Physician's Examination", which explained that Appellant had expressed his suicidal ideations and failed suicide attempt directly to medical personnel at Sewickley Valley Hospital. *Id.* at 7.

Further, emergency room physician Dr. Gaetano Licata authored a report that indicated:

[Appellant] was treated symptomatically here now. At this point the patient certainly has expressed suicidal thoughts and wishes to me, especially with holding a gun to his head and pulling the trigger. At this point I do not feel comfortable allowing [Appellant] to go home. The patient has refused to sign a [voluntary commitment]. At this point he has been 302'd, which has been upheld. At this point [Appellant's] case was discussed in detail with Dr. Mandoly who accepts [Appellant] for admission to 4–Central. At this point he will be transferred to 4–Central in stable condition.

Appellant's Sewickley Valley Hospital Emergency Department Report, 4/26/07, at 2.

Appellant's subsequent medical records reveal he was psychiatrically evaluated and eventually discharged on April 29, 2007, with a diagnosis of "major depression-moderate-recurrent . . .". Appellant's Sewickley Valley Hospital Discharge Summary Report, 4/29/07, at 2.

Given the foregoing, we conclude the trial court had sufficient evidence from which to find that Appellant was involuntarily committed pursuant to Section 302 of the MHPA.

■ Although Appellant has challenged the validity and appropriateness of his commitment by arguing it was not initiated by a licensed psychiatrist, a plain reading of 50 P.S. § 7302, which allows the involuntary examination to be triggered by any "physician" or "other authorized personnel", belies Appellant's argument. It is well settled that "when interpreting a statute, the court must give plain meaning to the words of the statute. It is not a court's place to imbue the statute with a meaning other than that dictated by the plain and unambiguous language of the statute." *In re R.D.R.*, 876 A.2d 1009, 1016 (Pa.Super.2005); *see also* 1 Pa.C.S.A. § 1921(b).

■ Our review of the record additionally supports the trial court's denial of Appellant's petition to have his firearm rights reinstated. At the hearing, Appellant denied having the suicidal ideations noted in his medical records, and considered them to be a "conspiracy against [Appellant]". N.T., 7/13/10, at 13, 52–53. In support of his petition, Appellant offered the expert testimony of a psychiatrist, Dr. Allan Clark, who on direct examination opined that Appellant did not pose a risk to himself or others. N.T., 8/17/10, at 10. However, during cross examination, Dr. Clark admitted that although he was aware of allegations that Appellant had voiced suicidal ideations in April of 2007, he "never heard" specifically that Appellant had placed a gun to his head, and admitted he had never reviewed Appellant's April, 2007 Sewickley Valley Hospital records. *Id.* at 16. Significantly, Dr. Clark conceded that if Appellant had placed a gun to his head, that would "affect" his opinion. *Id.*

After hearing the foregoing evidence, the trial court denied Appellant's petition to have his firearm rights reinstated. The trial court determined that Appellant posed a risk to himself, and opined as follows:

*In re: R.F.,* 914 A.2d 907 (Pa.Super.2006), the Superior Court found that internet research on methods of suicide coupled with suicidal ideation and a

phone call to a suicide hotline was sufficient evidence to find clear and present danger of harm to himself. It is much more evident in the above-referenced case that [Appellant] satisfies the requirements under the statute in that he put a gun to his head and pulled the trigger; but for an apparent malfunction with the gun, [Appellant] would have harmed himself.

\* \* \*

Under 18 Pa.C.S. § 6105(f)(1), the court may grant relief to a person subject to § 6105(a) as it deems appropriate if it is determined that the "applicant may possess a firearm without risk to the applicant or any other person." ( [Appellant] is subject to 18 Pa.C.S. § 6105(a) as he has been involuntarily committed. *See* 18 Pa.C.S. § 6105(c)(4)). The board-certified psychiatrist who stated his expert opinion at the hearing was uninformed about the involuntary commitment and the circumstances surrounding [Appellant's] commitment. After the psychiatrist was informed as to the facts of the commitment, he stated these circumstances did change his expert opinion. Additionally, his opinion is premised on [Appellant] maintaining treatment and medication for his diagnosis; in the past, [Appellant] stopped taking his medication.

For the reasons stated above, the petition to restore firearm rights is hereby DENIED.

Trial Court Opinion, 9/24/10, at 2–3.

■ It is well-settled that a "... finder of fact is free to believe all, part or none of a witness' testimony." *Watson v. American Home Assurance Company,* 454 Pa.Super. 293, 685 A.2d 194, 199 (1996) *citing Burrell v. Philadelphia Electric Co.,* 438 Pa. 286, 265 A.2d 516, 517 (1970). Here, the trial court, as the fact finder, acted within its discretion in failing

to credit Appellant's denial of suicidal ideations, including a suicide attempt, and discounting the testimony of Appellant's psychiatric expert. We therefore find no basis to disturb the trial court's findings.

■ As to Appellant's constitutionality challenges, we find that these issues have been waived by Appellant because he has failed to fully develop them. *See Commonwealth v. Tielsch,* 934 A.2d 81, 93 (Pa.Super.2007) (holding that undeveloped claims will not be considered on appeal). Although in his brief Appellant repeatedly references and presents some discussion regarding his constitutional challenges, such references and discussions are general in nature and lack specific assailments of the MHPA and the Pennsylvania Uniform Firearms Act *vis á vis* the federal and state constitutions. *See* Appellee Pennsylvania State Police Brief at 8–10 (explaining that Appellant's constitutional claims consist of "bald assertions" that were not adequately raised and preserved with the trial court, and that Appellant has failed to provide "any real explanation of how the facts of [Appellant's] case violated any specific provision of either the state or federal constitution, or even cite to how those provisions were applied and reviewed beyond basic citation").

Waiver notwithstanding, we do not find Appellant's constitutional challenges to 18 Pa.C.S.A. § 6105(c)(4) to be meritorious. The "longstanding prohibitions on the possession of firearms by felons or the mentally ill" have been upheld repeatedly by the United States Supreme Court, and those measures have been found to be "presumptively lawful regulatory measures." *District of Columbia v. Heller,* 554 U.S. 570, 626–627, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). Moreover, it is a "well-established rule that a law is presumed to be constitutional and may only

be found to be unconstitutional if the party challenging the law can prove that it 'clearly, palpably, and plainly' violates the Constitution." *Nixon v. Commonwealth,* 576 Pa. 385, 839 A.2d 277, 286 (2003) *citing Consumer Party of Pa. v. Commonwealth,* 510 Pa. 158, 507 A.2d 323, 331–332 (1986).

Therefore, based on the authority and rationale set forth above, we affirm the trial court's denial of Appellant's petition to reinstate his firearm rights and to expunge his mental health record pursuant to 18 Pa.C.S.A. § 6105(c)(4).

Order affirmed.