J-A06001-20

2020 PA Super 126

IN RE: E.H.

APPEAL OF: E.H.

IN THE SUPERIOR COURT
OF PENNSYLVANIA

No. 2419 EDA 2019

Appeal from the Order Entered July 18, 2019
In the Court of Common Pleas of Montgomery County
Civil Division at No: 2019-01453

BEFORE:  STABILE, J., KING, J., and STEVENS, P.J.E.*

OPINION BY STABILE, J.:                    **FILED MAY 28, 2020**

Appellant, E.H., appeals from an order denying his petition for restoration of firearm rights pursuant to 18 Pa.C.S.A. § 6105(f)(1).  We affirm.

On January 24, 2019, Appellant filed a petition to restore his firearm rights.  On July 8, 2019, the trial court held an evidentiary hearing concerning Appellant's petition.  The court summarized the relevant evidence as follows:

> [Appellant], a twenty-four year old man, testified . . . that he was currently unemployed and living with his parents.  On July 24, 2016, he was taken to a hospital "because they deemed [he] was a threat."  After the initial evaluation, he was released and then taken to Montgomery County Emergency Services, after his father filed a petition for involuntary commitment "due to an incident at home."  [Appellant] had made a threat to take his own life using a gun, or to have the police hurt him with their firearms.  At that time, he had recently purchased two handguns.  [Appellant] testified that he has a "panic disorder" for which he takes

_____

* Former Justice specially assigned to the Superior Court.

medication and performs "coping mechanisms." This disorder leads to him having "panic attacks."

[Appellant] stayed at Montgomery County Emergency Services until July 28, 2016, where he received treatment, medication and counseling. He was diagnosed with an "adjustment disorder." Following his release, [Appellant] underwent out-patient counseling once a week for four months. He then saw a psychiatrist every other week for six months, and at the same time met with a counselor. He continued to receive mental health treatment for three years. Throughout this time, he was prescribed medication for his panic disorder. In August of 2017, he stopped taking this medication because he did not like the way it made him feel, and he also stopped going to counseling at that time. [Appellant]'s family doctor prescribed another drug, amitriptyline (an anti-depressant) to help him sleep.

[Appellant]'s attorney referred [Appellant] to Dr. Dattilio, whom he saw twice in 2018. Dr. Dattilio told [Appellant] to stop taking illegal drugs, and he testified that he complied with this advice in October of 2018. [Appellant] testified that he continued to have panic attacks up to "a few months" before the hearing. He takes no medication to prevent these attacks. His treating doctor advised him to refrain from drinking alcohol.

[Appellant] testified that in November of 2016, he and his father were involved in a physical altercation. His mother called the police. [Appellant] left the house and was tracked down by the police. [Appellant] said he did not remember the circumstances of the altercation, based this lack of memory on the drugs he was taking at the time. He also has a "fuzzy" memory about a subsequent incident in August of 2017 in which he locked his mother in the basement of their house. Police were again called at that time. [Appellant's] doctor had recommended that he stop drinking alcohol and continue to take amitriptyline. [Appellant] has not complied with these recommendations. [Appellant] testified that his last "panic attack" occurred approximately five months prior to the date of the hearing. He also had an attack about two or three months prior to that attack.

Appellant's father, [H.H.], testified that near the time his son bought two guns, [Appellant] told his father he had "thought of killing himself and his girlfriend." [H.H.] described an incident when [Appellant] got on his motorcycle and said he was going to

buy a BB gun and aim it at a police officer. After [Appellant] barricaded his mother in the basement in August of 2017, [H.H.] and [Appellant] got into a physical altercation. The police were called and [Appellant] was taken to the hospital.

Trial Ct. Op., 9/25/19, at 2-3. The court continued:

This court carefully observed [Appellant] and his witnesses at the hearing. When testifying, apparently in favor of his son's guns being returned, [H.H.] sweated profusely and looked with apprehension at his son. When [Appellant] testified, he appeared nervous and had a strange gaze in his eyes.

*Id.* at 4-5.

Appellant submitted to the court Dr. Dattilio's November 2, 2018 expert report, which concluded that Appellant "is worthy of having his record expunged and does not pose a future risk for violence to himself or to anyone else at this juncture." Ex. P-3.

On July 28, 2019, the trial court entered an order denying Appellant's petition for restoration of firearm rights. Appellant filed this timely appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant raises a single issue in this appeal: "Did the learned trial judge err in refusing to grant [Appellant's] Petition for Restoration of Firearm Rights pursuant to 18 Pa. C.S.A. Section 6105(f)(1)?" Appellant's Brief at 3.

18 Pa.C.S.A. § 6105(f)(1) prescribes, "Upon application to the court of common pleas under this subsection by an applicant subject to the

prohibitions under subsection (c)(4),[1] the court may grant such relief as it deems appropriate if the court determines that the applicant may possess a firearm without risk to the applicant or any other person." Section 6105(f)(1) "plainly leaves the decision of whether to restore the right to possess a firearm within the discretion of the trial court." *E.G.G. v. Pennsylvania State Police*, 219 A.3d 679, 683 (Pa. Super. 2019). An abuse of discretion "is not merely an error in judgment . . . [It] occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record." *Id.* Moreover, "it is well-settled that a [] finder of fact is free to believe all, part or none of a witness' testimony" and therefore may "discount[] the testimony of Appellant's psychiatric expert." *Id.*

The trial court gave the following explanation for denying Appellant's petition:

> When considering the events leading up to [Appellant's] outbursts and threats to kill himself (by police) and his girlfriend, his actions towards his father and mother which required police intervention, the extensive and fairly recent psychiatric and psychological treatment, the repeated panic attacks, and admitted use of illegal drugs (marijuana) and of alcohol against his doctor's orders, it is quite clear to this court that [Appellant] would present a great risk to himself, to his family and to society in general, were he [to] be permitted to own guns.

_____

[1] 18 Pa.C.S.A. § 6105(c)(4) prohibits any person from possessing or using a firearm "who has been involuntarily committed to a mental institution for inpatient care and treatment under section 302, 303 or 304 of the provisions of the act of July 9, 1976 (P.L. 817, No. 143), known as the Mental Health Procedures Act." There is no dispute that Appellant is subject to this provision.

Trial Ct. Op. at 5. Having reviewed the record, we agree with this analysis.

Appellant relies heavily on Dr. Dattilio's expert opinion that Appellant does not pose a future risk for violence to himself or anyone else. Appellant's argument reduces to the proposition that if his condition satisfied Dr. Dattilio, it should have satisfied the court as well.

Our recent decision in *E.G.G.*, another firearm restoration case, demonstrates that it was within the trial court's discretion to disregard Dr. Dattilio's opinion. The petitioner in *E.G.G.* was involuntarily committed in 2003 for suicidal ideations and again in 2005 for hallucinatory and agitated behavior. In 2017, the petitioner moved for restoration of his firearm rights. He argued that the cause of his troubles was addiction to medications, but he stopped taking them in 2005 and did not have any problems thereafter. He submitted an expert report from a psychologist that he was not a risk to others and that reinstatement of his gun permit would not increase the risk. The trial court denied reinstatement, and we affirmed, stating:

> [I]t is well-settled that a [] finder of fact is free to believe all, part or none of a witness' testimony." *J.C.B. v. Pennsylvania State Police*, 35 A.3d 792, 797 (Pa. Super. 2012) (finding "the trial court, as the fact finder, acted within its discretion in[,]" inter alia, "discounting the testimony of Appellant's psychiatric expert.").

> In this case, the trial court, while cognizant of the evaluator's findings, ultimately concluded that lingering concerns about Appellant's mental health and his interactions with police prevented Appellant from meeting his burden of proving that his firearm rights should be restored. We decline to disturb this discretionary finding.

*Id.* at 683-84.

The same logic applies here. The trial court took Dr. Dattalio's report into account, but it ultimately decided that its concerns about Appellant's involuntary commitment, psychiatric history and strange in-court demeanor made it too risky to restore his firearm license. This balancing of interests was well within the court's discretion.

It also was within the trial court's discretion to factor H.H.'s in-court behavior into its decision. As the factfinder, the trial court had the right to assess the witnesses' credibility not only by their spoken words but also by their demeanor. While H.H. verbally professed to support reinstatement of Appellant's firearm rights, his sweating and nervous glances indicated that he feared and distrusted Appellant. The trial court had the discretion to perceive H.H.'s demeanor as a sign that Appellant was unfit to possess firearms. As an appellate court, we must pay proper deference to this credibility determination. *Hirsch v. EPL Technologies, Inc.*, 910 A.2d 84, 88 (Pa. Super. 2006) ("[a]s long as sufficient evidence exists in the record to support the finding found by the trial court, as factfinder, we are precluded from overturning that finding and must affirm, thereby paying the proper deference due to the factfinder who heard the witnesses testify and was in the sole position to observe the demeanor of the witnesses and assess their credibility").

In short, based upon the record before us, we cannot conclude that the trial court "ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *E.G.G.*, 219 A.3d at 684. We decline to disturb the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/28/20