J-A26026-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: A.Z. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.Z. | |
| | No. 1206 EDA 2021 |

Appeal from the Order Entered April 1, 2021
In the Court of Common Pleas of Philadelphia County
Civil Division at No: Jan. Term, 2021 No. 1428

BEFORE:  BOWES, J., STABILE, J., and McCAFFERY, J.

MEMORANDUM BY STABILE, J.:                **FILED FEBRUARY 10, 2022**

Appellant, A.Z., appeals from an order denying his petition for restoration of firearm rights pursuant to Section 6105(f)(1) of the Uniform Firearms Act, 18 Pa.C.S.A. § 6105 (f)(1).  Upon review, we affirm.

On January 22, 2021, Appellant filed a petition to restore his firearms rights.  On March 29, 2021, the trial court held an evidentiary hearing concerning Appellant's petition.  The court summarized the relevant evidence as follows:

> A.Z. testified that at some point between 1995 and 2000, he was committed to the Hall Mercer Mental Health Center affiliated with the University of Pennsylvania.  The police arrived at his house and took A.Z. to the hospital in handcuffs.  Although A.Z. testified that he was admitted to the mental health facility, neither the University of Pennsylvania Health System nor Philadelphia Community Behavioral Health produced any records reflecting A.Z.'s commitment.  The Pennsylvania State Police produced a one page Notification of Mental Health Commitment reflecting that A.Z. was involuntarily committed on December 25, 2000.

A.Z. stayed at the hospital for 3 days. He was then discharged and did not have any follow-up treatment. A.Z. has not sought any further counseling for depression or any other mental condition. He has not taken any medications for any mental health conditions.

In 2009, A.Z. was arrested for DUI. The charges for the DUI were later expunged pursuant to Accelerated Rehabilitative Disposition.

A.Z. testified on direct examination that two Protection From Abuse actions had been instituted against him. The first PFA, dating back to approximately 2000, stemmed from a domestic dispute between A.Z. and his mother, with whom A.Z. was living at the time. The PFA was initially brought as an emergency and was dismissed after the initial three[-]day period. The second PFA dates back to 2014, and it was brought by Melissa Smart, A.Z.'s ex-girlfriend. A.Z. initially brought criminal charges against Ms. Smart for assault in 2013, and Ms. Smart brought the PFA against A.Z. in 2014. On cross-examination, A.Z. admitted that the second PFA action resulted in the court imposing a temporary PFA order that lasted from November 2013 until February 2014.

A.Z. failed to recall during direct examination an arrest in 2013 for assault and other related charges. Ms. Smart had brought the charges, and those charges were later withdrawn. When questioned by counsel for the Pennsylvania State Police as to the reason he did not remember those criminal charges when asked on direct examination, A.Z. stated that they "slipped my mind."

On direct examination, A.Z. testified that he learned of the restrictions against his possessing a firearm in 2017 or 2018 when the Pennsylvania Department of Corrections conducted a background check related to possible employment for A.Z. as a correction[] officer. On cross-examination, however, A.Z. admitted that he was also denied a firearm in 2016 when he attempted to purchase a pistol at the Philadelphia Training Academy. A.Z. also admitted that he attempted unsuccessfully to purchase a pistol a second time from the Philadelphia Training Academy in 2017. The attempted purchases in 2016 and 2017 did not relate to the employment he sought from the Pennsylvania Department of Corrections.

In September 2020, A.Z. underwent a psychological evaluation with Dr. H. Anthony Semone in connection with filing [the

underlying petition]. [The trial court] accepted into evidence the unrebutted psychological report of Dr. Semone, dated November 2, 2020. Dr. Semone examined A.Z. both "virtually" and in person for a total of approximately 15 hours. Dr. Semone concluded without reservation that A.Z. does not possess a risk of harm to himself or others as a result of possessing a firearm.

A.Z. did not seek to introduce any other live testimony, evidence or affidavits.

Trial Court Opinion, 7/15/21, at 2-4 (citations to the record omitted).

On April 1, 2021, the trial court entered an order denying Appellant's petition for restoration of his firearm rights. Appellant filed this timely appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises several issues for our consideration. However, upon review of Appellant's Rule 1925(b) statement and his appellate brief, it appears Appellant focuses principally on the following issues: (1) The trial court abused its discretion in not properly weighing the expert's opinion; (2) treatment and care under Section 302 of the MHPA[1] is insufficient to trigger a deprivation of Appellant's firearms rights under the Uniform Firearms Act, and (3) the instant matter is distinguishable from **E.G.G. v. Pennsylvania State Police**, 219 A.3d 679 (Pa. Super. 2019), and **Sylvester v. Sylvester**, No. 3447 EDA 2019, 2021 WL 424011 (unpublished memorandum) (Pa. Super.

---

[1] Act of July 9, 1976 (P.L. 817, No. 143), known as the Mental Health Procedures Act ("MHPA").

Feb. 8, 2021), and that the trial court erred in finding that the instant matter is controlled by those authorities.

Section 6105(f)(1) reads as follows: "Upon application to the court of common pleas under this subsection by an applicant subject to the prohibitions under subsection (c)(4),[2] the court may grant such relief as it deems appropriate if the court determines that the applicant may possess a firearm without risk to the applicant or any other person." Section 6105(f)(1) "plainly leaves the decision of whether to restore the right to possess a firearm within the discretion of the trial court." *E.G.G.*, 219 A.3d at 683. An abuse of discretion "is not merely an error in judgment . . . [It] occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record." *Id.* Moreover, "it is well-settled that a [] finder of fact is free to believe all, part or none of a witness' testimony" and therefore may "discount[] the testimony of Appellant's psychiatric expert." *Id.*

The trial court gave the following explanation for denying Appellant's petition:

> At the hearing, [the trial court] heard the testimony of A.Z., accepted into evidence the unrebutted psychological report of Dr. Semone, and accepted into evidence the stipulated exhibits.

---

[2] 18 Pa.C.S.A. § 6105(c)(4) prohibits any person from possessing or using a firearm "who has been involuntarily committed to a mental institution for inpatient care and treatment under section 302, 303 or 304 of the provisions of the act of [the MHPA]."

Based on this testimony and evidence, [the trial court] properly made credibility determinations.

[The trial court] did not find A.Z. credible. [The trial court], as finder of fact, was free to believe all, part, of none of A.Z.'s testimony. *See*, *e.g.*, *E.G.G.*, 219 A.3d at 684. While A.Z. easily recalled certain facts about his prior encounters with both the family court and criminal justice systems, A.Z. omitted or could not recall other key facts on direct examination, only to later recall those facts when confronted with them on cross-examination. Of particular note, A.Z. failed to mention a prior arrest when questioned during direct examination. A.Z's counsel asked him specifically "Have you ever been arrested or charged with a crime?" and A.Z. did not mention the prior arrest assault in response to that question. While the charges stemming from the arrest were later withdrawn, A.Z.'s failure to recall the arrest (and the absence of a reasonable explanation for that failure) casts significant doubt on A.Z.['s] overall credibility. A.Z. also claimed he failed to recall his two prior unsuccessful attempts to purchase a pistol. A.Z.'s inability to recall other details critical to the prosecution of his [p]etition further eroded his credibility. Finally, A.Z. did not offer any character evidence witnesses from the community to vouch for or corroborate A.Z.'s claims regarding his fitness to possess a firearm.

While the [trial court] accepted Dr. Semone's report[,] which concluded that A.Z. would not pose a risk of harm to himself or others if A.Z. possessed a firearm, Dr. Semone's report is not dispositive. *E.G.G.*, 219 A.3d at 684; *see also Sylvester*[,] (relying on *E.G.G.*). [The trial court] considered several factors in determining the weight and credibility to ascribe to Dr. Semone's report: (1) the conclusions in Dr. Semone's report were on Dr. Semone's limited consultations with A.Z.; (2) A.Z. had no prior consultation history with Dr. Semone and A.Z. only consulted Dr. Semone in connection with this proceeding; and (3) Dr. Semone did not testify at the hearing.

Based on the entirety of the circumstances, [the trial court] weighed A.Z.'s own lack of credibility more heavily than the conclusions in Dr. Semone's report. Specifically, [the trial court] had concerns[] in conjunction with A.Z.'s lack of candor and credibility, regarding (1) A.Z.'s mental health; (2) A.Z.'s encounters with the family court and criminal justice systems via [PFA] proceedings and an arrest stemming from an alleged

- 5 -

domestic incident; (3) and the lack of corroborating character witness testimony.

Trial Court Opinion, 7/15/21, at 5-6 (citation to the record omitted).  Having reviewed the record, and upon consideration of the trial court's reasons for not granting Appellant's petition for the reinstatement of his firearms rights, we conclude that the trial court did not abuse its discretion for doing so.

Appellant relies on Dr. Semone's expert opinion that Appellant does not pose a future risk for violence to himself or anyone else.  In Appellant's view, the expert's opinion was dispositive of his petition and the trial court's failure to go along with the expert's opinion constituted an abuse of discretion.  We disagree.

Our decision in *E.G.G.*, another firearms restoration case, demonstrates that it was within the trial court's discretion to disregard Dr. Semone's opinion.  The petitioner in *E.G.G.* was involuntarily committed in 2003 for suicidal ideations and again in 2005 for hallucinatory and agitated behavior.  In 2017, the petitioner moved for restoration of his firearms rights.  He argued that the cause of his troubles was addiction to medications, but he stopped taking them in 2005 and did not have any problems thereafter.  He submitted an expert report from a psychologist that stated that Appellant was not a risk to others and that reinstatement of his gun permit would not increase the risk.  The trial court denied reinstatement, and we affirmed, stating:

> [I]t is well-settled that a [] finder of fact is free to believe all, part or none of a witness' testimony." *J.C.B. v. Pennsylvania State Police*, 35 A.3d 792, 797 (Pa. Super. 2012) (finding "the trial

court, as the fact finder, acted within its discretion in[,]" inter alia, "discounting the testimony of Appellant's psychiatric expert.").

In this case, the trial court, while cognizant of the evaluator's findings, ultimately concluded that lingering concerns about Appellant's mental health and his interactions with police prevented Appellant from meeting his burden of proving that his firearm rights should be restored. We decline to disturb this discretionary finding.

*Id.* at 683-84.

The trial court took Dr. Semone's report into account, but it ultimately decided that its concerns about Appellant's lack of candor and credibility made it too risky to restore his firearms license. This balancing of interests was well within the court's discretion. *Id.*[3]

To the extent Appellant is asking us to reweigh the evidence in more favorable terms to him, we must decline the invitation. As an appellate court, we may not reweigh the evidence where, as here, the trial court's factual findings are supported by the record and the weighing of the evidence is neither arbitrary nor capricious. Accordingly, we will not disturb the trial court's assessment of the weight of the evidence.

Appellant's second argument, *i.e.*, Section 302 is insufficient to trigger a deprivation of Appellant's firearm rights under the Uniform Firearms Act, is based on Appellant's understanding of ***Wilborn v. Barr***, 401 F.Supp.3d 501

---

[3] Appellant seems also to ignore that "a present clean bill of mental health is no guarantee that a relapse is not possible." ***In re Keyes***, 83 A.3d 1016, 1027 (Pa. Super. 2013).

(E.D. Pa. 2019). In Appellant's view, an individual must be adjudicated as a "mental defective" or be "committed to a mental institution" for the firearm prohibition to be triggered.[4] Because Section 302 does not require either circumstance, Appellant continues, Section 302 is insufficient to trigger a prohibition of firearms under the Uniform Firearms Act.

We disagree. First, it is undisputed that Appellant was subject to involuntary examination and treatment under Section 302.[5] Furthermore, it is undisputed that, under the plain language of Section 6105(c)(4), examination and treatment under Section 302 is sufficient to trigger a firearm prohibition under the Uniform Firearms Act.

Second, to the extent that Appellant relies on **Wilborn**, such reliance is misplaced. **Wilborn** dealt with whether Section 302 of MHPA is sufficient to trigger a "federal firearm prohibition under 18 U.S.C. § 922(g)(4)." **Wilborn** at *505. Here, we are dealing with Section 6105 of the Pennsylvania Uniform Firearms Act, not with federal law. Accordingly, Appellant's reliance on the federal district court's opinion discussing the requirements of 18 U.S.C. § 922(g)(4) is irrelevant for purposes of our analysis.

---

[4] Appellant uses the quoted terms as defined under federal law for purposes of 18 U.S.C. §922(g)(4). **See**, **generally**, **Wilborn**.

[5] The Notification of Mental Health Commitment provided by the Pennsylvania State Police also includes a certification from the examining physician stating that the involuntary commitment of Appellant under Section 302 was necessary. **See** Section 6105(c)(4) of the Uniform Firearms Act.

Finally, Appellant argues that the trial court erred in relying on **E.G.G.** and **Sylvester** as these cases are factually distinguishable from the instant matter. The trial court did not find that **E.G.G.** and/or **Sylvester** are factually similar to the instant matter, or that **E.G.G.** and **Sylvester** controlled the outcome of the instant matter. As the trial court clearly stated, it relied on those cases only in connection with a limited matter: *i.e.*, weight to be accorded to the testimony of an expert. As noted above, the trial court correctly noted that the expert opinion was not dispositive of the matter, and that it was free to credit all, part, or nothing at all of the expert's opinion. As noted, the trial court weighed more heavily Appellant's lack of candor and credibility than Dr. Semone's report, providing reasons, which are not arbitrary or capricious, for doing so.

Based upon the record before us, we cannot conclude that the trial court "ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." **E.G.G.**, 219 A.3d at 684. We decline to disturb the trial court's order.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 2/10/2022*