J-A03036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| THOMAS DEVIETRO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA STATE POLICE AND | : | |
| CROZER CHESTER MEDICAL CENTER | : | |
| A/K/A CROZER-KEYSTONE HEALTH | : | |
| SYSTEM | : | |
| | : | |
| Appellees | : | No. 1653 EDA 2022 |

Appeal from the Order Entered May 25, 2022
In the Court of Common Pleas of Delaware County
Civil Division at No(s): CV-2021-007927

BEFORE:   KING, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:                          **FILED MAY 18, 2023**

Appellant, Thomas DeVietro, appeals from the order entered in the Delaware County Court of Common Pleas, which denied his petition to expunge his involuntary commitment record and to restore his firearm rights. We affirm in part and vacate and remand in part for further proceedings.

The trial court set forth the relevant facts of this case as follows:

[O]n June 8, 2018, [Appellant] presented to Springfield Hospital, where he reported stress and recurrent suicidal ideation with a plan of how he would commit suicide. As a result, he was subject to involuntary emergency treatment and was involuntarily committed under Section 302 of the Mental Health Procedures Act ("MPHA"). After a three-day involuntary commitment…, Crozer-Chester staff completed an Application for Extended Involuntary Treatment under

---

[*] Former Justice specially assigned to the Superior Court.

Section 303 of the MHPA; the 303 Application was subsequently withdrawn and [Appellant] was discharged on June 15, 2021. Following his involuntary commitment, [Appellant's] firearm rights were revoked under the Uniform Firearms Act, as individuals who have been involuntarily committed for psychiatric treatment under Section 302 of the MHPA are barred from any form of firearm possession.

(Trial Court Opinion, dated 5/9/22, at 1-2).

On September 20, 2021, Appellant filed a petition to expunge his involuntary commitment record alleging a lack of sufficient evidence to support the commitment. Appellant further sought to restore his right to possess firearms under 18 Pa.C.S.A. § 6015(f)(1). The court held a hearing on January 25, 2022, at which Appellant testified. By order dated May 9, 2022 and filed May 25, 2022, the court denied Appellant's petition. Appellant timely filed a notice of appeal on June 3, 2022. The court did not order, and Appellant did not file, a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b).

Appellant raises three issues for our review:

Whether the Trial Court erred in assessing [Appellant's] petition based on the "threats and acts" formulation for determining whether sufficient evidence supported [Appellant's] involuntary commitment, when the evaluating physician who ordered [Appellant's] involuntary commitment applied the "inability to satisfy basic needs" formulation?

If the "threats and acts" formulation for determining whether sufficient evidence supported [Appellant's] involuntary commitment was the correct formulation to apply, whether the Trial Court erred in finding that sufficient evidence supported the conclusion that [Appellant] had committed acts in furtherance of a threat to commit suicide;

- 2 -

specifically, whether the Trial Court erred by concluding that [Appellant] had committed an act in furtherance of a suicidal threat merely because he "owned multiple firearms" and "stated he had considered shooting himself"?

Whether the Trial Court erred by failing to consider [Appellant's] petition for restoration of firearm rights under 18 Pa.C.S.A. § 6105(f)(1) based on [Appellant's] present ability to possess a firearm without risk to himself or any other person, as opposed to his ability to possess a firearm without risk at the time of his involuntary commitment?

(Appellant's Brief at 7-8).

For purposes of disposition, we consider Appellant's first and second issues together. Therein, Appellant argues that the MHPA sets forth three alternative formulations for determining whether a person poses a clear and present danger of harm to himself. Appellant claims that his commitment paperwork indicates that Appellant met the "inability to satisfy basic needs" formulation such that Appellant posed a clear and present danger of harm upon his arrival at the facility.[1] Nevertheless, Appellant insists that when the trial court analyzed Appellant's expungement petition, the court failed to evaluate whether sufficient evidence existed for the conclusion that Appellant met the "inability to satisfy basic needs" criteria. Instead, Appellant contends the trial court improperly analyzed one of the other formulations under the MHPA, namely, whether Appellant made threats to commit suicide and had committed acts in furtherance of those threats (the "threats and acts"

---

[1] Appellant makes this claim based on one portion of his paperwork where a box next to the "inability to satisfy basic needs" section is checked off.

- 3 -

formulation). By evaluating Appellant's expungement petition based on a formulation for determining clear and present danger that was different from the formulation applied by the evaluating physician who ordered Appellant's commitment, Appellant maintains the trial court failed to defer to the physician's conclusions when it considered Appellant's expungement petition.

Even if the court correctly assessed Appellant's expungement petition under the "threats and acts" formulation, Appellant argues the evidence was insufficient for a commitment under that formulation. Appellant avers that the trial court's findings that Appellant's actions prior to his commitment constituted the development of a plan to commit suicide was manifestly unreasonable and erroneous based on the evidence available to the evaluating physician at the time of Appellant's commitment. Appellant contends that owning firearms and knowing how to operate them does not equate to a suicidal plan. Appellant insists that his alleged statement that he had "considered shooting himself" is mere suicidal ideation and does not constitute an act in furtherance of such ideation. Appellant posits that "[w]hat the [t]rial [c]ourt characterizes as 'a plan' to commit suicide is nothing more than an abstract ideation." (*Id.* at 28). Appellant emphasizes that there is no evidence of any act that Appellant took in furtherance of a suicide threat, which is expressly required to support an involuntary commitment based on the "threats and acts" formulation. For these reasons, Appellant concludes this Court must vacate the order denying his expungement petition, and

- 4 -

remand with instructions for the trial court to evaluate Appellant's petition under the same formulation used by the evaluating physician; or reverse the order denying Appellant's expungement petition based on insufficient evidence for the commitment. We disagree.

The MHPA governs applications for involuntary commitment and provides, in relevant part, as follows:

**§ 7302. Involuntary emergency examination and treatment authorized by a physician—Not to exceed one hundred twenty hours**

**(a) Application for Examination.**—Emergency examination may be undertaken at a treatment facility upon the certification of a physician stating the need for such examination; or upon a warrant issued by the county administrator authorizing such examination; or without a warrant upon application by a physician or other authorized person who has personally observed conduct showing the need for such examination.

(1) Warrant for Emergency Examination.—Upon written application by a physician or other responsible party setting forth facts constituting reasonable grounds to believe a person is severely mentally disabled and in need of immediate treatment, the county administrator may issue a warrant requiring a person authorized by him, or any peace officer, to take such person to the facility specified in the warrant.

(2) Emergency Examination Without a Warrant.—Upon personal observation of the conduct of a person constituting reasonable grounds to believe that he is severely mentally disabled and in need of immediate treatment, and physician or peace officer, or anyone authorized by the county administrator may take such person to an approved facility for an emergency examination. Upon arrival, he shall make a written statement setting forth the grounds for believing the person to be in need of such examination.

**(b) Examination and Determination of Need for Emergency Treatment.**—A person taken to a facility shall be examined by a physician within two hours of arrival in order to determine if the person is severely mentally disabled within the meaning of section 301(b)[1] and in need of immediate treatment. If it is determined that the person is severely mentally disabled and in need of emergency treatment, treatment shall be begun immediately. If the physician does not so find, or if at any time it appears there is no longer a need for immediate treatment, the person shall be discharged and returned to such place as he may reasonably direct. The physician shall make a record of the examination and his findings. In no event shall a person be accepted for involuntary emergency treatment if a previous application was granted for such treatment and the new application is not based on behavior occurring after the earlier application.

> [1] 50 P.S. § 7301.

\* \* \*

50 P.S. § 7302(a), (b).[2]

**§ 7301. Persons who may be subject to involuntary emergency examination and treatment**

**(a) Persons Subject.**—Whenever a person is severely mentally disabled and in need of immediate treatment, he may be made subject to involuntary emergency examination and treatment. A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself, as defined in subsection (b), or the person is determined to be in need of assisted outpatient treatment as defined in subsection (c).

---

[2] An involuntary commitment under Section 7302 is commonly known as a "302 commitment." *See In re B.W.*, ___ Pa. ___, 250 A.3d 1163, 1166 (2021).

**(b) Determination of Clear and Present Danger.**—

(1) Clear and present danger to others shall be shown by establishing that within the past 30 days the person has inflicted or attempted to inflict serious bodily harm on another and that there is a reasonable probability that such conduct will be repeated.  If, however, the person has been found incompetent to be tried or has been acquitted by reason of lack of criminal responsibility on charges arising from conduct involving infliction of or attempt to inflict substantial bodily harm on another, such 30-day limitation shall not apply so long as an application for examination and treatment is filed within 30 days after the date of such determination or verdict.  In such case, a clear and present danger to others may be shown by establishing that the conduct charged in the criminal proceeding did occur, and that there is a reasonable probability that such conduct will be repeated.  For the purpose of this section, a clear and present danger of harm to others may be demonstrated by proof that the person has made threats of harm and has committed acts in furtherance of the threat to commit harm.

(2) Clear and present danger to himself shall be shown by establishing that within the past 30 days:

(i) **the person has acted in such manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under this act**; or

(ii) the person has attempted suicide and that there is the reasonable probability of suicide unless adequate treatment is afforded under this act.  **For the purposes of this subsection, a clear and present danger may be demonstrated by the proof that the person has made threats to commit suicide and has committed acts which are in furtherance of the threat to commit suicide**; or

> (iii) the person has substantially mutilated himself or attempted to mutilate himself substantially and that there is the reasonable probability of mutilation unless adequate treatment is afforded under this act. For the purposes of this subsection, a clear and present danger shall be established by proof that the person has made threats to commit mutilation and has committed acts which are in furtherance of the threat to commit mutilation.

> \* \* \*

50 P.S. § 7301(a), (b) (emphasis added).

"[A] person who has developed a complete plan, or taken steps to develop a plan, to commit suicide has committed acts which are in furtherance of the threat to commit suicide." *In re B.W., supra* at \_\_\_, 250 A.3d at 1175 (internal quotation marks omitted). Further, the act of "engaging in the planning process constitutes an act in furtherance of the threat to commit suicide." *Id.* An "act in furtherance" need not be overt or tangible. *Id.* at \_\_\_, 250 A.3d at 1176-77 (holding articulation of specific plan to harm identified target that is deemed credible by medical professionals is sufficient to prove act in furtherance of threat to commit harm; reversing Superior Court's holding that B.W.'s actions constituted mere threat without act in furtherance). *See also Appeal of H.D.*, 698 A.2d 90, 94 n.4 (Pa.Super. 1997), *appeal denied*, 553 Pa. 691, 717 A.2d 1029 (1998) (holding H.D.'s plan to jump off of bridge was sufficient to support 302 commitment; rejecting characterization of such statement as mere suicidal "idea" that did not establish suicidal intent; stating "we refuse to second-guess the conclusion of

the emergency medical and mental health professionals that H.D. presented a clear and present danger of harm to herself").

The Uniform Firearms Act prohibits a person who has been subject to a 302 commitment from possessing, using, controlling, selling, transferring, manufacturing, or obtaining a license to possess firearms. *See* 18 Pa.C.S.A. § 6105(c)(4). The firearm restriction may be lifted if the 302 commitment was based on insufficient evidence. *See* 18 Pa.C.S.A. § 6111.1(g)(2) (stating person who is involuntarily committed under Section 302 of MHPA may petition court to review sufficiency of evidence upon which commitment was based; if court determines evidence upon which involuntary commitment was based was insufficient, court shall order that record of commitment be expunged).

"The evidence upon which the commitment was based is the information contained in the physician's record of the examination of the individual and the resultant findings." *In re Vencil*, 638 Pa. 1, 13, 152 A.3d 235, 242 (2017) (internal quotation marks omitted). Therefore, the trial court must "review the physician's findings, made at the time of the commitment, to determine whether the evidence known by the physician at the time, as contained in the contemporaneously-created record, supports the conclusion that the individual required commitment under one (or more) of the specific, statutorily-defined circumstances." *Id.* Such review by the trial court "requires deference to the physician, as the original factfinder, as the

- 9 -

physician examined and evaluated the individual in the first instance, was able to observe his or her demeanor, and has particularized training, knowledge and experience regarding whether a 302 commitment is medically necessary." *Id.* at 20, 152 A.3d at 246.

Initially, regarding Appellant's first claim that the court applied the incorrect formulation when evaluating Appellant's petition for expungement, we note that in Appellant's petition for expungement, he alleged that the evidence was insufficient to demonstrate Appellant was a clear and present danger to himself under the "threats and acts" formulation. (**See** Petition for Expungement, filed 9/20/21, at 8). Further, in his bench memo following the hearing on Appellant's petition for expungement, he stated "[b]ased on Section 301(b)(2) of the MHPA, the Threats and Act formulation in Section 301(b)(2)(ii) … applies to the case at hand." (Appellant's Bench Memo, filed 2/17/22, at 5). The bench memo goes on to analyze whether there was sufficient evidence to demonstrate that Appellant was a clear and present danger under the "threats and acts" formulation. (**Id.** at 5-8).

Appellant acknowledged in his post-hearing bench memo that one of the individuals who completed Appellant's paperwork checked the box next to the "inability to satisfy basic needs" formulation under Section 7301(b)(2)(i),[3] but

---

[3] As Appellee, the Pennsylvania State Police ("PSP") observes, there appears to be different handwriting throughout the application for Appellant's involuntary commitment. Thus, it is not entirely clear if the evaluating

*(Footnote Continued Next Page)*

Appellant went on to state, "[h]owever, the physician's description of [Appellant's] specific behavior on page 4 of the Notification Form alleges threats to commit suicide and does not mention an inability of [Appellant] to meet his basic needs, implicating a Threats and Acts analysis."[4] (*Id.* at 11-12). In light of Appellant's arguments before the trial court, we cannot agree with his complaint on appeal that the court used the incorrect formulation to evaluate the sufficiency of the evidence, where Appellant expressly conceded the "threats and acts" formulation was the relevant test under which the court should evaluate whether Appellant demonstrated a clear and present danger to himself. Essentially, Appellant is now raising a new argument on appeal, which he cannot do. *See* Pa.R.A.P. 302(a) (stating issues not raised in trial court are waived and cannot be raised for first time on appeal).

Regarding whether the evidence was sufficient to demonstrate Appellant posed a clear and present danger to himself under the "threats and acts" formulation, the trial court reasoned:

> In this case, [Appellant] presented to Springfield Hospital on June 8, 2018. The certified records from the hospital state:
>
> "33 [male] US Army veteran presents to Springfield

---

physician or the intake social worker checked this box on Appellant's paperwork. By contrast, the application makes clear the physician drafted the sections describing Appellant's behavior that led the physician to believe Appellant posed a clear and present danger to himself.

[4] Appellant then argued in his bench memo that the evidence was also insufficient to demonstrate that he posed a clear and present danger to himself under the "inability to satisfy basic needs" formulation.

[Emergency Department]; recurrent suicidal ideations & plan. Plan = [gunshot wounds] or ingesting poison. Recurrent suicidal ideations for years following discharge from Army & death of mother. Thoughts of harming himself on hourly basis. Acutely worse today."

Pg. 5

"Patient verbalizing depression, hopeless, helpless, suicidal, considered shooting self, owns several guns.

Pg. 9

These records show that [Appellant] presented with suicidal ideation and a plan to commit suicide. He admitted to owning several guns and to considering shooting himself.

[Appellant] contends presently that his statements did not constitute a "plan" to commit suicide because he did not take any affirmative acts towards the development of a plan, such as researching how to commit suicide or making purchases with the intent to commit suicide. However, the information presented at the time of the involuntary commitment was enough for the treating physician to have believed that [Appellant] had developed a plan to commit suicide—he already owned multiple firearms, [from] which it could be reasonably inferred that he knew how to operate due to his military service, and he stated he had considered shooting himself. This plan would be considered an act committed in furtherance of a threat to commit suicide under the standard presented in *In re B.W.*

Since the record supports the conclusion of the physician that [Appellant] was a clear and present danger to himself, it was reasonable for the physician to conclude that [Appellant] needed to be involuntarily committed at the time. As the decision made at the time of the commitment was supported by the evidence as contained in the contemporaneously-created record at the time of the involuntary commitment, … [Appellant] is not eligible for an expungement under 18 [Pa.C.S.A.] § 6111.1(g)(2) ….

(Trial Court Opinion at 4-5).

- 12 -

We agree with the trial court that the records from Appellant's involuntary commitment contain sufficient evidence to demonstrate that Appellant was a clear and present danger to himself under the "threats and acts" formulation. *See* 50 P.S. § 7301(b)(2)(ii). ***See also In re Vencil, supra***. Contrary to Appellant's assertions, an overt or tangible act was not required to support Appellant's involuntary commitment. ***See In re B.W., supra***; ***Appeal of H.D., supra***. As the PSP observed in its brief: "The only other step that remained was for Appellant to pick up a gun and kill himself with it by pulling the trigger. There need not be any other showing of an act in furtherance, because the only act left is the act of suicide." (PSP's Brief at 13-14). Therefore, Appellant's first and second issues on appeal merit no relief.

In his third issue, Appellant argues the court applied the incorrect legal analysis when it evaluated Appellant's request for restoration of his firearm rights. Appellant claims that restoration of firearm rights is based on the petitioner's **current** ability to safely possess firearms. Appellant insists the trial court misapplied the applicable law because it focused solely on Appellant's ability to safely possess firearms at the time of his commitment. Appellant concludes the trial court's application of the wrong legal standard for evaluating his petition to restore his firearm rights warrants reversal, and this Court must grant relief. We agree relief is due.

"Upon application to the court of common pleas under this subsection

by an applicant subject to the prohibitions under subsection (c)(4) [related to involuntary commitments under the MHPA], the court may grant such relief as it deems appropriate if the court determines that the applicant may possess a firearm without risk to the applicant or any other person." 18 Pa.C.S.A. § 6105(f)(1). Thus, "Section 6105(f)(1) plainly leaves the decision of whether to restore the right to possess a firearm within the discretion of the trial court." *In re E.H.*, 233 A.3d 820, 823 (Pa.Super. 2020), *appeal denied*, ___ Pa. ___, 249 A.3d 497 (2021) (internal citation and quotation marks omitted). "An abuse of discretion is not merely an error in judgment[;] it occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record." *Id.*

Instantly, Appellant testified at the hearing about his personal growth, support system, and mental stability. Appellant informed the trial court that he was willing to undergo a risk assessment with a licensed psychologist if the court requested him to do so. (*See* N.T. Hearing, 1/25/22, at 46); (Appellant's Bench Memo at 14). Counsel for the PSP also noted at the hearing that it would like to see a risk assessment of Appellant as it pertained to restoration of Appellant's firearm rights. (*See* N.T. Hearing at 49). Although there was some conversation at the conclusion of the hearing about keeping the record open for Appellant to undergo a risk assessment, the trial court did not formally keep the record open for this purpose. Instead, the trial court

- 14 -

acknowledged that it seemed like the PSP was "more or less agreeable to providing [Appellant] relief [on the restoration of firearm rights,] contingent on [Appellant] undergoing a risk assessment[.]" (N.T. Hearing at 52). Thus, the court suggested the parties should file post-hearing briefs on the expungement issue because "that component of relief is really in dispute[.]" (*Id.*)

Nevertheless, in its decision denying relief, the court stated Appellant was not eligible for restoration of firearm rights under Section 6105(f)(1), but the court did not explain why. (*See* Trial Court Opinion at 5). Of note, the court did not cite to any of Appellant's testimony at the hearing or mention the fact that Appellant had not undergone a risk assessment as reasons for the court's denial of relief. On appeal, the PSP concedes the importance of a risk assessment and expert testimony as it relates to the restoration of firearm rights. (*See* PSP's Brief at 19-20). Under these circumstances, the best resolution of this issue is to remand for a new hearing at which time the trial court can hear evidence regarding whether Appellant "may possess a firearm without risk to [himself] or any other person." *See* 18 Pa.C.S.A. § 6105(f)(1). Upon remand, the trial court shall direct Appellant to undergo a risk assessment or other appropriate evaluation the court deems necessary to aid its decision. Accordingly, we affirm the portion of the court's order denying Appellant's expungement petition; vacate the portion of the court's order denying his request for restoration of firearm rights; and remand for further

proceedings consistent with this memorandum.

Order affirmed in part, vacated in part. Case remanded for further proceedings. Jurisdiction is relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 5/18/2023*